142                                65 Mass. App. Ct. 142 (2005)

Hobbs Brook Farm Property Co. Limited Partnership *v.* Conservation Commission of Lincoln.

HOBBS BROOK FARM PROPERTY COMPANY LIMITED
PARTNERSHIP *vs.* CONSERVATION COMMISSION OF LINCOLN.

No. 04-P-1168.

Middlesex. September 13, 2005. - November 22, 2005.

Present: LAURENCE, KAFKER, & TRAINOR, JJ.

*Zoning,* By-law, Wetlands. *Wetlands Protection Act. Department of Environmental Protection. Municipal Corporations,* Conservation commission.

This court concluded that because a town's wetlands protection by-law imposed a more rigorous local regulatory scheme on the plaintiff's riverside project than the applicable provisions of G. L. c. 131, § 40 (the State Wetlands Protection Act), the Department of Environmental Protection lacked authority to issue an order superseding the town's denial of an order of conditions for the project, which denial was based on the town's by-law. [149-153]

CIVIL ACTION commenced in the Superior Court Department on August 11, 2000.

The case was heard by *Wendie I. Gershengorn,* J., on motions for judgment on the pleadings.

*Thomas J. Harrington* for the defendant.

*Thomas Frisardi* for the plaintiff.

*George A. Hall, Jr.,* for Massachusetts Association of Conservation Commissions, amicus curiae, submitted a brief.

KAFKER, J. The issue presented in this case is whether the town of Lincoln's wetlands protection by-law (town by-law) governing this riverside project is more stringent than the applicable provisions of G. L. c. 131, § 40, the State Wetlands Protection Act (act). If the town by-law is more stringent, then the town conservation commission's (commission) denial of an order of conditions for the project pursuant to the by-law is

determinative. If it is not, then the superseding order of conditions issued by the Department of Environmental Protection (DEP) allowing the project to proceed is controlling. We conclude that the various requirements in the town by-law combine to impose a more rigorous local regulatory scheme.

The plaintiff, Hobbs Brook Farm Property Company Limited Partnership (HBF), sought to construct a common driveway largely over an existing cart path located within fifty feet of a river and to replace an existing wooden bridge spanning the river with a new bridge. The purpose of the driveway and bridge was to reach one of five lots created by a plan endorsed by the town planning board as "approval not required" (the ANR plan). The project came under the jurisdiction of the commission pursuant to the act, the regulations promulgated under the act and contained in 310 Code Mass. Regs. §§ 10.00 et seq. and the town by-law. After multiple hearings on HBF's initial project proposal and subsequent plan revisions, the commission issued two written denials of orders of conditions as to lots 4 and 5 as shown on the ANR plan. One denial was based on the act, and one was based on the town by-law.

HBF sought review of the denial issued pursuant to the act from the DEP. The DEP issued a superseding order of conditions characterizing the project as a "limited project" and approving it subject to conditions. The commission filed an administrative appeal of that superseding order; that appeal was ultimately withdrawn on the commission's motion, and the superseding order of conditions became final.

HBF also sought review, in Superior Court, of the denial issued pursuant to the town by-law. The review asked for was in the nature of certiorari. See G. L. c. 249, § 4. A Superior Court judge determined that the DEP's superseding order of conditions controls because the town by-law does not provide greater protection to the wetlands at issue than the act. The judge allowed HBF's motion for judgment on the pleadings, and judgment entered directing the commission to issue an order of conditions for the project. The commission appeals. In light of our conclusion that the town by-law establishes more stringent

standards than the DEP "limited project" review applied here, we reverse.[1]

*The town by-law and its application.* The purpose of the town by-law is "to protect the wetlands . . . by controlling activities deemed by the Commission likely to have a significant adverse effect, immediate or cumulative, upon wetland values." Town by-law, § 1. According to § 11 of the town by-law, "[t]he applicant for a permit shall have the burden of proving by a preponderance of the credible evidence that the work proposed in the application will not have significant adverse effects, immediate or cumulative, upon the wetland values protected by this bylaw." If the proposed activity "would have adverse effects on the wetland values protected by this bylaw, the applicant shall have the additional burden of proving by a preponderance of the credible evidence that there is no feasible alternative to the proposed activity which would have materially less adverse effect on the wetland values protected by this bylaw."[2] *Ibid.* For activities within fifty feet of the river, "[t]he applicant has the additional burden to overcome the presumption set forth in Section 2." *Ibid.* Section two of the town by-law establishes a presumption that any "building upon or other alteration" within fifty feet of a river will have a "significant adverse effect on the wetland values protected by" the town by-law "unless the applicant demonstrates by convincing evidence that such significant adverse effect will not occur." Failure to satisfy any one of these requirements "shall be sufficient cause for the Commission to deny a permit, or to impose conditions sufficient to prevent any adverse effects on the wetland values protected by this bylaw." Town by-law, § 11.

It is undisputed that most of the proposed work would occur within fifty feet of a river. With regard to the bridge and

[1]The commission also appeals from the judge's decision to allow amplification of the record with additional evidence. Given the result we reach, we need not address this issue. Similarly, we need not address the commission's argument that the DEP's superseding order was improper because it approved a revised bridge plan that the commission never reviewed.

[2]The commission further argues that this "no feasible alternative" analysis is required whether the adverse effects are significant or not. Therefore, the project must have no adverse effects on wetland resources at all, and if it has any, the adverse effects must be minimized to the extent feasible.

driveway, the commission examined the proposed excavation required within the fifty-foot buffer zone (including excavation within four feet of the river bank), the amount of fill required to raise the grade of the driveway, the location of concrete slabs below groundwater level, and the proposed "tight" work zone. With regard to the work zone, the commission found that HBF had not demonstrated, and the commission did not believe, that with storage of equipment, turning vehicles, and construction-related activity, the work area could be confined to the twenty-four-foot wide zone shown on the plans or that the "bridge [could] be done without having a significant impact on the river, the banks, and the bordering wetlands."[3]

As previously noted, the town by-law also requires an applicant to demonstrate that there is "no feasible alternative . . . which would have materially less adverse effect on the wetland values protected by this bylaw." Town by-law, § 11. In addition to the bridge design contained in HBF's initial submission, the commission considered two alternative bridge designs proposed by HBF but rejected them both because of insufficient information and because both involved excavation "extremely close" to the river banks. The commission did not find these designs to be alternatives lacking adverse effects. Finally, the commission found that HBF had failed to "demonstrate by a preponderance of credible evidence that foregoing development on lots 4 and 5 is not a feasible alternative in light of the costs and expected returns of the overall project."

Ultimately, the commission concluded that HBF

> "failed both to meet its burden of proof and to overcome the presumption of Section 2 of the Wetlands Protection Bylaw with respect to all proposed work beyond the development of lots 2 and 3.[4] Accordingly, the remainder of the project as presented will have significant adverse

[3]As for lot 4, the commission found that one-half of the proposed building area is within the buffer zone, i.e., within 100 feet of the river. Areas within 100 but more than fifty feet are covered by the by-law but not subject to the presumption. Because of the steep slope and extensive grading required on lot 4, the commission found that approximately 15,000 square feet of buffer zone, consisting of mature woodland, would be heavily disturbed.

[4]Lot 1 was not at issue.

effects on wetland values in protected resource areas, including: protection of public or private water supply, protection of groundwater, flood control, *erosion and sedimentation control*, storm damage prevention, avoidance of water pollution, protection of fisheries, and protection of wildlife habitat. These effects, in part, are attributable to, but not limited to, creation of new impervious surface area, removal of vegetation, potential alteration and filling of Resource Areas, further compromising the integrity of the Hobbs Brook's banks (beyond current conditions) and compromising an Outstanding Water Resource and its associated reservoir."[5] (Emphasis supplied.)

*DEP review.* To determine whether the town by-law standards applied are more stringent than the State standards, we must first clarify what standards the DEP actually applied to HBF's request for a superseding order of conditions. This is by no means obvious given the record before us. We begin with the act itself, which provides that in the case of riverfront areas,

> "no order issued by the . . . [DEP] shall permit any work unless the applicant, in addition to meeting the otherwise applicable requirements of this section has proved by a preponderance of the evidence that (1) such work, including proposed mitigation measures, will have no significant adverse impact on the riverfront area [for the enumerated statutory purposes] . . . and (2) there is no practicable and substantially equivalent economic alternative to the proposed project with less adverse effects on such purposes."

G. L. c. 131, § 40, nineteenth par.

HBF sought approval for its project as a "limited project" pursuant to 310 Code Mass. Regs. § 10.53(3) (1997), which provides: "Notwithstanding the provisions of 310 [Code Mass. Regs. §§] 10.54 through 10.58 and 10.60 [which contain the general performance standards applied by DEP], the issuing authority may issue an Order of Conditions and impose such conditions as will contribute to the interests identified in [G. L.]

---

[5]The significance of erosion and sedimentation control will be explained in more detail when the town by-law and "limited project standards" are compared, *infra.*

c. 131, § 40[,] permitting" certain "limited projects." Limited project review is, in the words of the regulation, an exercise of discretion: "In the exercise of this discretion, the issuing authority shall consider the magnitude of the alteration and the significance of the project site to the interests identified in [G. L.] c. 131, § 40, the availability of reasonable alternatives to the proposed activity, the extent to which adverse impacts are minimized, and the extent to which mitigation measures, including replication or restoration, are provided to contribute to the protection of the interests identified in [G. L.] c. 131, § 40." *Ibid.*

According to 310 Code Mass. Regs. § 10.53(3)(e) (1997), limited projects include "[t]he construction and maintenance of a new roadway or driveway of minimum legal and practical width acceptable to the planning board, where reasonable alternative means of access from a public way to an upland area of the same owner is unavailable."[6] The DEP concluded that the activity related to the proposed common driveway, stormwater management structures, and bridge "constitutes a 'limited project' pursuant to 310 [Code Mass. Regs. §] 10.53(3)(e) as there is no other means of access with less wetlands impacts to a substantial area of developable upland on Lot 5."[7]

The DEP's decision went on to note that "[b]ased on the Department's telephone conversation with Mr. Chip Norton of the City of Cambridge Water Department on February 13, 2001, it is the Department's belief that the project as conditioned will

---

[6]"Reasonable alternative means of access may include any previously or currently available alternatives such as realignment or reconfiguration of the project to conform to 310 [Code Mass. Regs. §] 10.54 to 310 [Code Mass. Reg. §] 10.58 or to otherwise minimize adverse impacts on resource areas. The issuing authority may require the applicant to utilize access over an adjacent parcel of land currently or formerly owned by the applicant, or in which the applicant has, or can obtain, an ownership interest. The applicant . . . shall present reasonable alternative means of access to the Board." 310 Code Mass. Regs. § 10.53(3)(e).

[7]Title 310 Code Mass. Regs. § 10.53(3)(i) (1997) also includes as a limited project "[t]he maintenance, repair and improvement (but not substantial enlargement) of structures, including dams and reservoirs and appurtenant works to such dams and reservoirs, buildings, piers, towers, headwalls, bridges, and culverts which existed on the effective date of 310 [Code Mass. Regs. §§] 10.51 through 10.60 (April 1, 1983)." Although HBF cited to this provision in its notice of intent and request for a superseding order of conditions, this provision was not relied on by the DEP.

not adversely affect the Cambridge Reservoir, Hobbs Brook or the interest of public water supply. Additionally, the Department finds that the project will have no adverse impact on the River-front Area because the common driveway will substantially utilize the existing denuded/disturbed cart path alignment and vegetative cover will be restored within any remaining denuded areas of the cart path pursuant to the proposed 'Riverfront Area Revegetation Plan' as conditioned by the Department." The decision made no reference to any impact arising from the excavation and construction associated with the new bridge.

With certain conditions, including those directed at sedimentation and erosion control, the DEP issued a superseding order of conditions allowing the project to move forward with a revised bridge plan. The superseding order of conditions included passing references to performance standards and the presumption that a riverfront area is deemed significant to protect the values of the act.[8] The revised bridge plan had a longer span than bridge designs presented to the commission, as a result of moving the bridge footings further away from the banks of the river.

The commission timely requested an adjudicatory hearing. Both the DEP and the commission filed motions to stay the proceedings before the office of administrative appeals until the Superior Court proceedings on the town by-law decision were completed and the issue whether the town by-law was more stringent than the act was resolved. An administrative law judge denied the motions to stay. The administrative law judge recognized that approval of a project as a limited project may demonstrate that the DEP imposed a less stringent standard than it normally does because review under a limited project allows the DEP "in specified circumstances to waive otherwise applicable performance standards and simply 'impose such conditions as will contribute to the interests identified' in the Wetlands Protection Act." The administrative law judge reasoned, however, that the town by-law also lacked specific performance standards; consequently, the commission, pursuant to the town by-law, and the DEP, pursuant to limited project review, both look to whether an applicant has demonstrated that its project serves wetlands interests. He therefore concluded that the DEP,

---

[8]This presumption is compared to the town by-law presumption, *infra*.

"though it relied on the limited project provision of the Wetlands Protection Regulations did not take a less stringent approach than did the Town."

In the certiorari action, the Superior Court judge determined that the town by-law did not provide greater wetlands protection than the regulations. The judge ruled that although the proposed project was approved by the DEP as a limited project, the DEP's findings that the project, subject to the conditions imposed, would not adversely affect the pertinent wetlands values demonstrated that the DEP held the project to the standard ultimately required by both the performance standards of 310 Code Mass. Regs. § 10.58 and the town by-law, i.e., no significant effect on wetlands interests. Thus, the judge concluded that the DEP's superseding order of conditions preempted the commission's order of conditions.

*Comparison of the town by-law and the DEP standards of review.* "It is well established that municipalities may enact more stringent requirements than those provided in the act. *Lovequist* v. *Conservation Commn. of Dennis,* 379 Mass. 7, 14-15 (1979). When a local conservation commission rests its decision on a wetlands by-law that provides greater protection than the act, its decision cannot be preempted by a DEP superseding order." *FIC Homes of Blackstone, Inc.* v. *Conservation Commn. of Blackstone,* 41 Mass. App. Ct. 681, 686-687 (1996). Where the local by-law does not impose more stringent controls than those set by the Legislature, the DEP has authority to issue a superseding order. See *DeGrace* v. *Conservation Commn. of Harwich,* 31 Mass. App. Ct. 132, 136 (1991).

In order to determine whether the town by-law is more stringent than the act, we focus our inquiry on three interrelated by-law requirements: (1) erosion and sedimentation control as a wetland value; (2) the burden of proof imposed on work within fifty feet of a river; and (3) the "no feasible alternative" requirement. We conclude that these requirements combine to impose a more rigorous local regulatory scheme designed to ensure that all but the most insignificant activities are precluded within fifty feet of a river.

The town by-law here specifically identifies erosion and sedimentation control as protected "values." Erosion and sedimentation control are not, however, among the specifically

enumerated values contained in the act. As we have previously stated in *T.D.J. Dev. Corp.* v. *Conservation Commn. of N. Andover*, 36 Mass. App. Ct. 124, 127 (1994), "[b]y expanding the interests to be protected under the by-law, the commission may impose conditions which might not be permissible under the act." There, as in this case, erosion and sedimentation control were among the additional interests at issue.

HBF, however, points us to 310 Code Mass. Regs. § 10.05(6)(b) (1997), which provides that the "Order [of conditions] shall impose conditions to control erosion and sedimentation within resource areas and the Buffer Zone." HBF further identifies regulations that address erosion and sedimentation, but do so in furtherance of groundwater and surface water quality.[9] These regulations, which provide more extensive treatment of erosion and sedimentation than the regulations in place when *T.D.J. Dev. Corp.* v. *Conservation Commn. of N. Andover*, *supra*, was decided, narrow the differences between the commission's and the DEP's consideration of these elements.

Nonetheless, the town by-law, in affording direct consideration of erosion and sedimentation control rather than the indirect consideration of erosion and sedimentation control in furtherance of other wetland values, offers somewhat greater protection, particularly where the commission found that the project would further compromise the integrity of the Hobbs Brook's banks beyond current conditions. Thus, erosion control in and of itself was a focal point of the commission's decision. By directly regulating erosion control under the town by-law, the commission could consider erosion in making the threshold decision to approve or disapprove the project rather than simply impose conditions on it in an effort to control erosion to protect other wetland values. This distinction, at least when combined with other additional requirements, renders the town by-law more stringent than the act and related regulations. *T.D.J. Dev. Corp.* v. *Conservation Commn. of N. Andover*, 36 Mass. App. Ct. at 127-128.

---

[9]HBF does not argue that 310 Code Mass. Regs. § 10.54 (1997), addressing "banks," applies to this project, and it is apparent, at least under the limited project standard, that the performance standards contained in § 10.54(4) need not be applied.

As explained above, the town by-law also contains a presumption of significant adverse effect for work done within fifty feet of the river; that presumption is absent from the limited project review under the regulations. The town by-law further requires that the applicant prove by convincing evidence that the presumed significant adverse effects will not occur. Town by-law, § 2. The act, in contrast, simply requires the applicant to prove by a preponderance of the evidence that the work, including proposed mitigation measures, will have no significant effect on the riverfront area. The limited project regulation exception contains neither presumptions nor burdens of proof. 310 Code Mass. Regs. § 10.53(3). There is, however, a presumption elsewhere in the regulations that "[w]here a proposed activity involves work within the riverfront area, the issuing authority shall presume that the area is significant to protect [the enumerated values]." 310 Code Mass. Regs. § 10.58(3) (2000).

HBF contends that the presumptions and burdens of proof under the town by-law and the act and its related regulations are functionally equivalent. Although the differences are subtle, we consider them material. The presumption under the town by-law is not just that the area is significant but that activity within fifty feet of the edge of a wetland will cause substantial adverse effects. Within fifty feet, the burden of proof is the higher standard of convincing evidence rather than the lesser standard of a preponderance of the evidence. Town by-law, § 2. The combination of the presumption of significant adverse effect and the requirement of convincing evidence to rebut that presumption presents a heavy burden on the applicant in this uncertain environment.

We also conclude that the "no feasible alternative" analysis under the town by-law is more demanding than the alternatives analysis applicable to the limited projects exception here. Under the town by-law, the applicant must show that there is "no feasible alternative to the proposed activity which would have materially less adverse effect on the wetland values protected by this by-law." Town by-law, § 11. In contrast, under the limited project exception, the alternatives analysis required is

tightly focused on alternative ways to gain access to an upland area. 310 Code Mass. Regs. § 10.53(e). Here, no other alternatives appear to have been considered by the DEP, nor does such analysis appear to be required under the limited project exception. The "no feasible alternative" analysis required by the town by-law is not limited to "substantially equivalent economical" alternatives, as it is under the regulations. 310 Code Mass. Regs. § 10.58(4)(c) (2000). Thus, the scope of the alternatives analysis the applicant is required to consider under the town by-law is not as narrow geographically or economically.

These differences are significant because the commission found that HBF failed to demonstrate by a preponderance of the evidence that forgoing development on lots 4 and 5 was "not a feasible alternative in light of the costs and expected returns of the overall project."[10] The DEP, on the other hand, only noted that there was "no other means of access with less wetlands impacts to a substantial area of developable upland on lot 5."[11]

In sum, we conclude that the town by-law requires a more exacting review due to its combination of direct consideration of erosion and sedimentation control as wetlands values, more stringent burdens of proof, and a more wide-ranging "alternatives" analysis. We therefore reverse the judgment of the Superior Court, and a new judgment shall enter declaring that

---

[10]HBF does not argue that the scope of the alternatives analysis performed by the commission exceeded its authority.

[11]HBF also relies on the alternatives analysis required by the performance standards of 310 Code Mass. Regs. § 10.58. This analysis, however, was not required to approve the project and does not appear to have been undertaken here. Regardless, even under the performance standards, there is still a requirement that the alternative be "substantially equivalent economically." HBF contends nonetheless that the use of the word "feasible" in § 10.58(4)(c)(1) indicates the alternatives analyses are essentially the same. We note that this language in the regulation only appears as part of the definition of "practicable." The act and regulation, however, require that the alternative be both practicable *and* substantially equivalent economically. The latter requirement narrows the scope of the alternatives that have to be considered under the act and regulations. By requiring consideration of all feasible alternatives and not just those feasible alternatives that are substantially equivalent economically, the by-law imposes additional requirements on the applicant.

the commission's order of conditions is not preempted by the superseding order of conditions issued by the DEP.

*So ordered.*