Ostrach, Stephen, J.

Statement of Facts

Both of the primary parties to this case have moved for summary judgment and judgment on the pleadings. Neither alleges that there are any material facts in dispute. The following, apparently undisputed, factual discussion is taken from the materials in the parties’ filings.
This case involves an application by plaintiff (“Allen Homestead”) to construct a 41-lot residential subdivision in Sturbridge. In September 2000 Allen Homestead filed a notice of intent with defendant Sturbridge Conservation Commission (“Commission”). That application sought permission to develop the subdivision under both the Massachusetts Wetlands Protection Act, G.L.c. 131, §40 (the “WPA”) and Sturbridge’s local bylaws, Sections 3.50 through 3.65. On August 21, 2001, the Commission issued an order of conditions approving the subdivision under the WPA and the bylaws. That approval further stated, however, that a new notice of intent would have to be filed for any individual lot construction within 200 feet of Allen’s Pond, a wetland resource area. Allen Homestead believes that seven of the proposed lots will require construction within 200 feet of Allen’s Pond.
In May 2004, Allen Homestead filed notices of intent proposing construction of seven single-family homes, together with associated improvements, one on each of the seven lots. It also proposed to build a retaining wall between the homes and Allen’s Pond and a swale to divert run-off water from the lots. According to Allen Homestead the proposed work would be done, not inside a wetland, but in a buffer zone at least 50 feet from any wetlands. On December 16, 2004, the Commission voted to deny Allen Homestead’s applications and on January 11, 2005, it issued seven orders of conditions denying permission. Each order states that the area in which Allen Homestead proposed to do work is significant to three protected wetlands interests: groundwater supply, storm damage protection and prevention of pollution. The denials include a one-page document (“Attachment Cl”) headed “Reason for DENIAL...” Attachment C-1 refers to only two wetland resource areas, inland bank and land under water. It also provides that: “Due to site constraints of a significant steep slope and limited area for development, the Conservation Commission determined that the performance standards of inland bank and land under water could not be met.”
Allen Homestead appealed those denials to the Massachusetts Department of Environmental Protection. On March 25, 2005 DEP issued superseding orders which overturned the Commission’s denials under the WPA and approved the work. DEP’s approval stated its “understanding” that “stormwater management for the lots was modeled from a design previously approved by the Conservation Commission . . .” and that “. . . [it] believes the projects can be conditioned in a manner which will provide an adequate level of control for erosion and sedimentation during construction.” The Commission did not appeal DEP’s decision. Allen Homestead has filed this action in the nature of certiorari, seeking to have the Commission’s denials vacated. It also asks for a declaration under G.L.c. 231A that the Commission’s bylaws are no more stringent than the WPA.

Analysis

The legal issue the Court must resolve is straightforward. “It is well-established that municipalities may enact more stringent requirements than those provided [by the WPA]. When a local conservation commission rests its decision on a wetlands by-law that provides greater protection than the act, its decision cannot be preempted by a DEP superseding Order.” FIC Homes of Blackstone, Inc. v. Conservation Commission of Blackstone, 41 Mass.App.Ct. 681, 686-87 (1996) (citations omitted). On the other hand, where the local by-law does not impose more stringent controls than those set by the legislature or the DEP, DEP has the authority to issue a superseding order which negates the municipal disapproval. DeGrace v. Conservation Commission of Harwich 31 Mass.App.Ct. 132, 136 (1991). Furthermore, this Court must review the denial of Allen Homestead’s applications on the basis of the reasons the Commission itself stated in the record filed with the Court, supplemented by the additional materials filed by the plaintiff as permitted by this Court’s Order of September 7, 2005. See Fieldstone Meadows Development Corp. v. Conservation Commission of Andover, 62 Mass.App.Ct. 265, 266 n.2 (2004) (“We confine our review to the reasons given by the commission for the denial of the application”); see also Hobbs Brook Farm Property Company Limited Partnership v. Conservation Commission of Lincoln, 65 Mass.App.Ct. 142, 143 (2005) (Hobbs Brook).
In this case then the court must engage in a three-step analysis. First it must determine whether the Commission intended to deny Allen Homestead’s applications on the basis of the local by-law in addition to the WPA. If so, it must determine whether the by-law is more stringent than the WPA. Finally, if the Commission prevails on those questions, the Court must determine whether the denial is based upon substantial evidence and is not arbitrary or capricious. See Lovequist v. Conservation Commission of Dennis, 379 Mass. 7, 17-18 (1979).
As to the first point, it seems clear that the Commission did feel it was exercising authority under both the WPA and town by-laws. See Attachment C-1 (“[The *566 Commission] finds that the project as proposed cannot be conditioned to meet the performance standards and protect the interests of the [WPA] and the Sturbridge Wetland Bylaw.”).
The second question is more difficult to answer. As the Hobbs Brook case suggests, it requires close analysis of just what the WPA and the local by-law require in the specific circumstances of the case before the Court. In Hobbs Brook, the Court concluded that the town by-law did require more exacting review because of the confluence of three interrelated factors: (1) the by-law, but not the WPA, required direct consideration of erosion and sedimentation control; (2) the by-law imposed a more stringent burden of proof on the applicant than does the WPA (convincing evidence rather than a simple preponderance); and (3) the by-law required a more wide-ranging consideration of alternatives, both geographically and economically, than does the WPA. Id. at 152.
In this case the Commission checked three boxes in its findings, thus identifying three protected wetlands interests: groundwater supply, storm damage protection and prevention of pollution. Attachment C-l then states two grounds for the Commission’s denial of Allen Homestead’s applications: (1) performance standards of inland bank and water could not be met because “due to site constraints related to the significant slope and 310 CMR 10.54(4) and 310 CMR 10.56(4) the project as proposed would fail to meet the general performance standards of protecting ground and surface water quality”; and (2) “The water quality swales as proposed do not meet the guidelines set forth in the DEP Stormwater Management Policy.” See Attachment C-l.
As an initial matter, the only three wetlands interests the Commission identified in its denials, groundwater supply, storm damage protection and pollution control are each specifically listed in DEP’s regulations as regulatory “interests.” 310 CMR 10.01(2). Furthermore, as Allen Homestead points out, the performance standards for “bank” established by the by-laws are identical to those set forth in DEP regulations established under the WPA. Compare Section 5.1.2 of the by-law with 310 CMR 10.54(4). Similarly the performance standards for “Land under water” are also identical to the equivalent DEP regulation. Compare Section 5.3.2 of the by-law with 310 CMR 10.56. Indeed, it is noteworthy that Attachment C-l refers only to the DEP regulations and not to the town by-law in identifying the applicant’s failure.
Allen Homestead argues that the same conclusion must be reached in connection with the second basis for the denial, namely the water quality swales. It notes that the Commission’s express reason for the denial, as quoted above, was that the swales “... did not meet the guidelines set forth in the DEP Stormwater Management Policy.” The Commission did not suggest that its regulations were in any manner different or stricter in this regard.
The Commission’s response to Allen Homestead’s arguments is twofold. It argues that the by-laws are, at least in one respect, more stringent than the WPA since Section 6.1 of the by-laws which deals with slopes of greater than 8% imposes a more extensive 500-foot buffer zone. The fatal flaw in this argument is that the Commission’s denials here make no reference to Section 6.1, do not make any of the factual findings necessary to trigger that by-law (e.g that there are slopes greater than 8% which dominate the initial 200 feet of resource buffer zone) and, by referring to “the 100-foot buffer zone to Allen’s Pond,” seem not to have relied on that provision. This Court must review the Commission’s denial on the basis of “the reasons given by the commission ...” Fieldstone Meadows Development Corporation v. Conservation Commission of Andover, 62 Mass.App.Ct. 265, 266 n.2 (2004). Since, as Hobbs Brook makes clear, the test is whether the by-law as applied in the case before the Court is more stringent, the Commission’s failure to cite or rely on Section 6.1 makes it irrelevant to this case.
The Commission’s other response fits better into the Hobbs Brook paradigm. It notes that, as was the case with the Lincoln by-law, the by-law here expressly includes “erosion and sedimentation control” as a value to be considered. By-law Section 3.51. DEP regulations, 310 CMR 10.05(6) (b), provide conditions must be imposed to “control erosion and sedimentation” and other DEP regulations “address erosion and sedimentation, but they do so in the furtherance of ground water and surface water quality” rather than as protected values in themselves. Hobbs Brook, supra at 150. That difference was one of the three factors the Hobbs Brook court relied upon in finding the Lincoln by-law more stringent than DEP regulations. Id. at 152.
Hobbs Brook did not, however, simply put the bylaw over the regulation, see a dispariiy and declare victory for the town. Rather the Court concluded that three differences “combine[d]” to make the by-law “more stringent.” Id. Two of those factors, a different burden of proof and a more expansive alternatives analysis simply are not present here. Thus Sturbridge’s stringency argument rests on only one leg rather than the more sturdy tripod in Hobbs Brook. Furthermore, consistent with the Court’s overall approach in Hobbs Brook, it did not rest simply on the textual difference between the regulation and the bylaw. The Court examined whether that difference played a role in the decision before it on review. Id. at 150 (“erosion control in and of itself was a focal point of the commission’s decision”).
In this case the three protected interests the Commission identified are each specifically protected by the WPA; the Commission did not specifically identify erosion control as a protected interest. Furthermore, *567 the specific reason the Commission denied the applications was because they failed to “meet the general performance standards of protecting ground and surface water quality.” Attachment C-l. It cited only two DEP regulations. It appears that in Hobbs Brook the local authority specifically concluded that erosion control, by itself, was a factor that warranted denial. Since it had exercised its authority to make erosion control an additional, stand-alone criterion, its conclusion on that point was deemed by the Appeals Court to be “more stringent” than DEP’s review of erosion control as a subsidiary factor.
Here, although the question is closer, the Commission’s decision-is based on the apparent failure to meet “general performance standards.” The regulation and the by-law impose identical standards. While Attachment C-l does refer at two points to “erosion,” it does so in the context of protecting wetland resource areas and the adequacy of the proposed retaining walls. Those concerns are addressed by DEP’s regulations under the WPA, which as noted above, do address as secondary matters erosion and sedimentation. Accordingly, as applied to these applications, it does not appear from Attachment C-l that the Commission applied a more stringent, erosion-related by-law standard to the development, which it could have done. Instead it imposed the exact ground and surface water “performance standards” promulgated by the DEP. Accordingly, DEP’s superseding orders have the effect of overturning the Commission’s action.[1]
Finally, Allen Homestead has shown an actual controversy between it and the Commission and that the relative stringency of the Commission’s by-laws and DEP regulations is fairly raised in that dispute. Accordingly, based on the record before the Court and for the reasons set forth above, I declare that, as applied to the specific applications at issue here; the Sturbridge by-law is not more stringent than DEP’s wetlands regulations.[2]

Conclusion

For the reasons stated above, the seven decisions of the Sturbridge Conservation Commission under review are vacated and a judgment shall be entered declaring that, as applied to the specific applications at issue, the Sturbridge by-laws are no more stringent than the wetlands regulations adopted by the Department of Environmental Protection.

 Attachment C-1 states that “the project as proposed cannot be conditioned to meet the performance standards and protect the interests of the [WPA] and the Sturbridge Wetland Bylaw.” That phrase, standing alone, might suggest the by-law reflects interests (at least in the area of erosion control) beyond those in the performance standards. As noted above, I do not so find. However, in the interests of completeness, if that passing comment were deemed a tacit imposition of a more stringent erosion standard than that set by DEP, I would not find that the by-law, considered as a whole, is more stringent than the regulation. In Hobbs Brook, “erosion control in and of itself was a focal point of the commission’s decision.” Id. at 150. There was no reference to or adoption of state standards. Furthermore, the other two Hobbs Brook factors are absent here, making the cumulative level of higher scrutiny employed by the Commission slight at most and quite different from the “more exacting review” found in that case. Id. at 152.

 In light of the decision reached today, there is no need to consider Allen Homestead’s final argument that the Commission’s decision lacks substantial evidence or is arbitrary and capricious.