Kane, Robert J., J.
Plaintiffs Herbert and Pamela Pheeney brought this action in the nature of certiorari pursuant to G.L.c. 249, §4, seeking to annul a decision by the Barnstable Conservation Commission (“the Commission”) denying them permission to construct a pier. This matter is before the court on the plaintiffs’ motion for judgment on the pleadings pursuant to Mass.R.Civ.P. 12(c) and Superior Court Standing Order 1-96. For the reasons set forth below, the plaintiffs’ motion is ALLOWED.

ADMINISTRATIVE RECORD

The Pheeneys own property located at 0 Sand Point Road in Osterville shown as Parcel 014,001 on the Town of Barnstable Assessors Map 073 (“the Locus”). The Locus is in an area of the town known as Three Bays, which includes North Bay, Cotuit Bay and West Bay, and adjoins a coastal water body known as Cotuit Narrows. Matthew Mitchell (“Mitchell”) owns property abutting the Locus at 41 Sand Point Road in Osterville shown as Parcel 014,002 on the Town of Barnstable Assessors Map 073.
On November 29, 2006, the Pheeneys and Mitchell filed a Notice of Intent (“NOI”) with the Commission seeking permission to construct on the Locus a four-foot wide, timber pile supported pier, 61 feet in length from the mean low water of Cotuit Narrows. The proposed pier would be used for recreational boating by both the Locus and Mitchell’s property, with two 21-foot Regulator outboard powerboats berthed there.
The Commission initially scheduled a public hearing on the NOI for January 9, 2007, but the Pheeneys requested a continuance until February 13, 2007. During the January 9 Commission meeting, which neither the Pheeneys nor their counsel attended, several commissioners had a brief discussion about the proposed pier. One commissioner suggested that the Commission, as well as the Town Waterways Committee reviewing the project, should look at the waterfront width and distances of the two lots at issue. Another commissioner posed the question of whether because two properties were involved, the Commission needed more information from the applicants about their *506 plans for property development. The Commission then voted to continue the hearing on the NOI until February 13, 2007.
The Pheeneys requested and received a further continuance to March 13, 2007 after their counsel died. The Waterways Committee notified the Commission that it had no objection to the Pheeneys’ project. At the public hearing on March 13, the Pheeneys attempted to demonstrate that the proposed construction of the pier met the performance standards for private docks and piers set forth in Chapter 703 of the Barnstable Town Code (“the Ordinance”) and would not have an adverse effect on any protected interest under either the state Wetlands Protection Act, G.L.c. 131, §40 (“the Act”), or the Ordinance.
Section 703-4M of the Ordinance sets forth performance standards governing the depth of docks or piers. Section 703-4M(l) provides that in areas determined to be of high-value shellfish habitat, the minimum depth under the draft of the boat must be 30 inches at mean low water. High-value shellfish habitat are:
those found to be significant to the provision or protection of the wetland values protected under Chapter 237, Wetlands Protection, of the General Ordinances of the Code of the Town of Barnstable.[2] Any area rated six or above on any maps or reports developed by the Natural Resources Division and filed with the Commission and the Town Clerk shall be presumptively considered a high-value shellfish area.
Section 703-4M(2) provides that in areas determined not to be high-value shellfish habitat, the minimum depth under the draft of the boat must be 12 inches at mean low water.
In preparing the NOI, the Pheeneys relied on a shellfish map of the Three Bays Area on record with the Town Clerk’s Office and the Commission. This map rates shellfish habitat from 1 to 10, with 1 the lowest value and 10 the highest. According to the map, the Locus is in an area designated as a “3" for shellfish productivity. At the hearing, the Pheeneys introduced documentation prepared by professional engineer Peter Sullivan that the proposed pier would extend 80.5 feet from a boardwalk previously approved by the Commission, 61 feet of which would extend below mean low water. The water depth at the end of the pier at low tide would be 3.4 feet. When motorboats are docked at the proposed pier, there would be a draft of 26 inches with the engine down. In accordance with Section 703-3D(6) of the Ordinance, the Pheeneys introduced a shellfish assessment performed by ENSR Marine and Coastal Center. That assessment found no seed sized animals, indicating that the project area was not a shellfish recruitment area. No oysters were found within 30 feet of the proposed pier. No soft-shell clams were found more than 40 feet from the mean high water mark. Of the nine areas within the footprint of the pier that were sampled, only one soft-shell clam and two quahogs were found. The highest density of quahogs was located 50 feet from the proposed pier.
The Commission’s agent, Robert Gatewood, reviewed the Town’s shellfish map and concluded that the proposed pier was not part of ahigh-value shellfish area. However, the Town’s biologist, Tom Morcotti, wrote that the area of the proposed pier is very productive and suitable for quahogs, soft-shell clams, and razor clams. Although the record of the March 13, 2007 hearing is incomplete because the video and audio equipment was faulty, it is undisputed that several residents raised concerns about piers in the area and the impact on shellfish habitat. The Commission voted to close the public hearing on the Pheeneys’ NOI on March 13.
Thereafter, the Commission discussed the NOI at its meetings on March 27 and April 10, 2007. On March 27, the Commission held an advisory meeting in which Commissioners had an opportunity to give their opinions on the project so that Commission agent Robert Gatewood could prepare a set of conditions for a Commission vote at a subsequent meeting. At the March 27 advisory meeting, one of the commissioners asserted that the area of the Locus is a shellfish area that should be rated higher than a “3" on the shellfish map, and introduced additional evidence into the record concerning the relative shellfish densities at two other locations. This led to a discussion of whether the Town’s shellfish map was inaccurate and should be revised. At the next Commission meeting on April 10, the Chairman informed the commissioners that according to town counsel, it was improper for the Commission to have received the evidence of the other two properties at the March 27 meeting. The Chairman advised the Commission that it could not consider this evidence in voting on the NOI.
In a decision dated April 17, 2007, the Commission denied the Pheeneys’ NOI under both the Act and the Ordinance on the ground that the proposed pier could not be conditioned to meet the performance standards for the interests of protection of land containing shellfish and protection of fisheries under the Act, and the interests of protection of shellfish, protection of fisheries, and recreation under the Ordinance. The Commission deemed the Locus to be a high-value shellfish habitat as defined in the Ordinance. The Commission found that the proposed pier was located in a very productive shellfish habitat, suitable for quahogs, soft-shell clams, razor clams, and oysters. The Commission further found that the proposed pier would eliminate shellfish habitat and impede access to the shellfish resource, compromising the recreational interests of shellfishermen. In so finding, the Commission specifically cited the testimony of recreational shellfishermen and the Barnstable Shellfish Committee. Finally, the Commission found that motorcraft use of the proposed pier would lead to sediment scour *507 and turbidity impacts on the bottom of the bay and shellfish resources.
On April 24, 2007, the Pheeneys requested from the Department of Environmental Protection (“DEP”) a superseding order of conditions to construct the pier, arguing that the proposed project met all of the applicable performance standards and that the Commission’s decision was contrary to the evidence. On June 6, 2007, the Pheeneys filed this Superior Court action in the nature of certiorari pursuant to G.L.c. 249, §4 seeking judicial review of the Commission’s denial of their NOI.
On July 18, 2007, DEP issued a Superseding Order of Conditions approving the construction of the pier. DEP determined that the project affected the following interests protected by the Act: groundwater supply, land containing shellfish, fisheries, storm damage prevention, prevention of pollution, protection of wildlife habitat, and flood control. DEP approved the project subject to 30 special conditions it deemed necessary to meet the performance standards of the state wetlands regulations. These included the condition that prior to the commencement of construction, at the discretion of the Barnstable Department of Natural Resources, the adjacent areas shall be seeded with juvenile soft shell clams and quahogs. On July 27, 2007, the Commission submitted notice to DEP requesting an adjudicatory review of the Superseding Order of Conditions on the ground that the Pheeneys’ proposed pier would cause the loss of significant shellfish habitat and shellfish productiviiy.
The Pheeneys filed an Amended Complaint in this action on May 12, 2008. Count I seeks judicial review and reversal of the Commission’s decision pursuant to G.L.c. 249, §4 on the ground that the decision lacks substantial evidence and is arbitrary and capricious. Count II seeks a declaratory judgment pursuant to Chapter 231A that the Commission’s failure to issue a decision within 21 days of the close of the public hearing requires dismissal of the Commission’s request for a DEP adjudicatory hearing and makes the July 18, 2007 Superseding Order of Conditions controlling on the project.

DISCUSSION

The standard of review for a certiorari action under G.L.c. 249, §4 varies according to the nature of the action for which review is sought. T.D.J. Develop. Corp. v. Conservation Comm’n of North Andover, 36 Mass.App.Ct. 124, 128, rev. den., 418 Mass. 1103 (1994). Where the action reviewed is a conservation commission’s denial of a project, an arbitrary and capricious standard is iypically applied. Fieldstone Meadows Develop. Corp. v. Conservation Comm’n of Andover, 62 Mass.App.Ct. 265, 267 (2004); Fafard v. Conservation Comm’n of Reading, 41 Mass.App.Ct. 565, 568 (1996); T.D.J. Develop. Corp. v. Conservation Comm’n of North Andover, 36 Mass.App.Ct. at 128. The court reviews the commission’s action to determine whether it was authorized by the governing statute, regulations, and bylaws. Fafard v. Conservation Comm’n of Reading, 41 Mass.App.Ct. at 568. Superior Court review is confined to those reasons given by the commission for the denial. Fieldstone Meadows Develop. Corp. v. Conservation Comm’n of Andover, 62 Mass.App.Ct. at 266.
The Pheeneys contend that this certiorari appeal of the Commission’s April 17, 2007 denial of their NOI is moot because that decision is preempted by DEP’s issuance of the July 18, 2007 Superseding Order of Conditions. The Wetlands Protection Act establishes minimum standards for the protection of the interests described in the statute. Lovequist v. Conservation Commission of Dennis, 379 Mass. 7, 15 (1979). It is well established that a municipality is entitled to enact local wetlands protection bylaws with more stringent requirements than those provided in the Act. Id.; Hobbs Brook Farm Prop. Co. Ltd. P’ship v. Conservation Comm’n of Lincoln, 65 Mass.App.Ct. 142, 149 (2005), rev. den., 446 Mass. 1104 (2006). When the conservation commission rests its decision on a local bylaw that provides greater protection than the Act, its decision cannot be preempted by a DEP superseding order. Hobbs Brook Farm Prop. Co. Ltd. P’shp v. Conservation Comm’n of Lincoln, 65 Mass.App.Ct. at 149; FIC Homes of Blackstone, Inc. v. Conservation Comm’n of Blackstone, 41 Mass.App.Ct. 681, 687 (1996), rev. den., 424 Mass. 1104 (1997). However, where the local bylaw does not impose more stringent controls than those established by the Act, the Legislature has reserved to DEP the authority to make the final decision on a project affecting wetlands, preempting the conservation commission’s authority to regulate that project. Hobbs Brook Farm Prop. Co. Ltd. P’ship v. Conservation Comm’n of Lincoln, 65 Mass.App.Ct. at 149; DeGrace v. Conservation Comm’n of Harwich, 31 Mass.App.Ct. 132, 135-36, rev. den., 411 Mass. 1105 (1991).
In determining whether or not a conservation commission based a particular denial on a local ordinance which is more stringent than the Act, the court focuses only on those specific provisions of the bylaw and Act involved in the Commission’s decision. T.D.J. Develop. Corp. v. Conservation Comm’n of North Andover, 36 Mass.App.Ct. at 126. The Appeals Court recently reviewed the Town of Barnstable’s wetlands ordinance in the context of the Commission’s denial of a proposed pier based on the impact on the Town’s recreation interests and the interest of recreational shellfishermen. See RogRers v. Conservation Comm’n of Barnstable, 67 Mass.App.Ct. 200, 202-03, rev. granted, 447 Mass. 1111 (2006). In analyzing the effect of a DEP superseding order, the Appeals Court noted that the Ordinance incorporates the definition of shellfish found in DEP’s regulations, but sets forth a broad definition of recreation not found in the Act. Id. at 205.[3] The court thus concluded:
*508 [E]ven though the by-law does not provide more stringent protection of shellfish than the State statute and related regulations, it does regulate the protection of recreational pursuits more austerely . . . Since the commission’s decision is based at least in part on its determination that the proposed pier would inhibit recreation under [the Ordinance], it cannot be preempted by the DEP’s superseding order.
Id. Similarly, in this case, the Commission’s April 17, 2007 decision was not based on a local regulation affording greater protection than the Act insofar as it rejected the Pheeneys’ NOI based on the protection of shellfish interests. However, insofar as the Commission based its decision on the Ordinance’s more stringent protection of recreation, DEP’s Superseding Order of Conditions cannot preempt the Commission’s denial and does not control the project. See id. Thus, the issuance of the July 18, 2007 Superseding Order of Conditions does not render the Pheeneys’ administrative appeal of the Commission’s decision moot with respect to recreation interests. See DeGrace v. Conservation Comm’n of Harwich, 31 Mass.App.Ct. at 136.
Nonetheless, the Pheeneys assert an independent ground for DEP preemption in this case. The Act provides in relevant part that following a public hearing on an NOI, the local conservation commission:
shall by written order within twenty-one days of such hearing impose such conditions as will contribute to the protection of the interests described herein, and all work shall be done in accordance therewith, if the conservation commission . . . make[s] a determination that the proposed activity does not require the imposition of such conditions, the applicant shall be notified of such determination within twenty-one days after said hearing.
G.L.c. 131, §40. Similarly, Section 237-6 of the Ordinance requires the Commission to act on an NOI within 21 days of the close of the public hearing. The Act further provides in relevant part:
[I]f a commission, after holding such a hearing has failed within twenty-one days therefrom to issue an order ... or where an order does issue from said commission, the applicant . . . may, by certified mail and within ten days from said commission’s order or failure to act, request the department of environmental protection to [issue a superseding order].
G.L.c. 131, §40.[4] The timing provisions of the Act are mandatory and a local community is not free to ignore them. Oyster Creek Preservation, Inc. v. Conservation Comm’n of Harwich, 449 Mass. 859, 866 (2007). “Thus, where a conservation commission issues its decision after the statutory deadline, it is appropriate that it should lose the right to insist on the provisions of its local bylaw, and that any superseding order issued by the DEP should apply in its stead." Id. A conservation commission’s failure to adhere to the statutory deadline for issuing a decision makes the DEP superseding order controlling regardless of whether the local bylaw is more protective than the Act. Id. at 865.
Here, it is undisputed that the Commission’s April 17, 2007 decision was not timely under the Act and the Ordinance because it issued more than 21 days after the close of the public hearing on March 13. Thus, the Pheeneys contend that the Commission has lost its right to enforce the more stringent provisions of the Ordinance with respect to recreation interests, and DEP’s Superseding Order of Conditions governs this project in all respects. The Commission argues, however, that there is no such preemption because the Pheeneys did not seek a DEP superseding order within 10 days of the expiration of the 21-day deadline, but instead waited until after the Commission issued its decision to appeal to DEP.
The preemptive effect of a DEP order when a conservation commission fails to act is essentially a punitive measure which deprives the local commission of its right to insist on greater protection than the minimum standards established by the Act. See Oyster Creek Preservation, Inc. v. Conservation Comm’n of Harwich, 449 Mass. at 865. The threat of preemption provides an incentive for local conservation commissions to act in a timely manner, thus protecting the applicant’s right to a prompt decision in matters affecting his property rights. Cf. Board of Aldermen of Newton v. Maniace, 429 Mass. 726, 729 (1999) (purpose of constructive permit approval under Chapter 40A is to induce local zoning board to act promptly on application). Here, the Commission violated its statutory duty to issue a decision on the Pheeneys’ NOI within 21 days of the hearing. The penalty for this dereliction of duty is the Commission’s inability to enforce its more stringent local bylaw. The fact that the Pheeneys awaited the Commission’s decision before filing their appeal to DEP does not excuse the Commission’s non-compliance with the directives of the Act and does not somehow “revive” the Commission’s ability to enforce the Ordinance.[5] The Commission’s failure to issue its decision within 21 days renders its late-issued decision “without effect.” Oyster Creek Preservation, Inc. v. Conservation Comm’n of Harwich, 449 Mass. at 865. Thus, under G.L.c. 131, §40, the Superseding Order of Conditions preempts the Commission’s April 17, 2007 denial of the NOI in all respects due to the untimeliness of that decision. DEP’s issuance of a controlling superseding order renders the Pheeneys’ judicial appeal of the Commission’s decision moot. Cf. DeGrace v. Conservation Comm’n of Harwich, 31 Mass. App.Ct. at 136.[6]
This Court is not persuaded, however, that the Commission’s failure to issue its decision within the 21 days required by the Act deprives it of the right to pursue its administrative appeal before DEP. Under G.L.c. 131, §40, when faced with a request for a *509 superseding order, DEP must “impose such conditions as will contribute to the protection of the [statutory] interests.” The Town of Barnstable retains an interest in ensuring the protection of shellfish and fisheries under the Act, and is entitled to pursue its administrative appeal to that end. See 310 Code Mass. Regs. §10.05(7)(j) (conservation commission may request review of superseding order). Cf. Oyster Creek Preservation, Inc. v. Conservation Comm’n of Harwich, 449 Mass. at 864-65 (emphasizing that Legislature did not intend commission’s failure to timely issue decision under G.L.c. 131, §40 to result in constructive approval of NOI). Accordingly, the Pheeneys’ pier project will be governed in the final instance by whatever superseding order DEP enters at the conclusion of the administrative appeal process.[7]

ORDER

For the foregoing reasons, it is hereby ORDERED that the plaintiffs’ motion for judgment on the pleadings be ALLOWED. It is hereby DECLARED and ADJUDGED that pursuant to G.L.c. 131, §40, DEP’s July 18, 2007 Superseding Order of Conditions, as it may be affirmed or modified at the conclusion of the pending administrative appeal, governs the Pheeneys’ pier project in all respects.

The general wetlands regulations at Chapter 237 of the Barnstable Town Code identify protection of shellfish as one of its purposes, and include shellfish as part of the definition of “aquaculture,” but otherwise do not specifically mention shellfish.

Section 237-13 of the Ordinance defines “recreation” as “[a]ny leisure activity or sport taking place in, on, or within 100 feet of a resource area which is dependent on the resource area and its values directly or indirectly for its conduct and enjoyment. Recreational activities include, but are not limited to, the following: noncommercial fishing and shellfishing .. . Structures and activities in or within 100 feet of a resource area shall not have a significant effect on public recreational values.”

DEP regulations provide with respect to requests for a superseding order of conditions that “[w]hen the basis of the request is the conservation commission’s failure to act, the request may be made at any time up to 70 days after the expiration of the period within which the conservation commission was to have acted.” 310 Code Mass. Regs. §10.05(7)(c). To the extent this appears to contradict G.L.c. 131, §40, this Court notes that an agency lacks authority to promulgate regulations which conflict with the statutes under which the agency operates. See Duarte v. Commissioner of Revenue, 451 Mass. 399, 411 (2008).

This Court notes that the Pheeneys’ course of action arguably was efficient in light of the possibility that the Commission would grant the NOI with conditions acceptable to them, obviating the need to seek a superseding order.

Accordingly, this Court need not address the Pheeneys’ alternative argument that the Commission’s decision is unsupported by substantial evidence and arbitrary and capricious to the extent it relied on the interests of recreation.

This Court notes that DEP’s final administrative decision with respect to a superseding order of conditions is subject to judicial review under G.L.c. 30A, §14. See Goldin v. Department of Envt'L Protection, 60 Mass.App.Ct. 1112 at *1, rev. den., 441 Mass. 1104 (2004); DeGrace v. Conservation Comm’n of Harwich, 31 Mass.App.Ct. at 135.