NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-276                                    Appeals Court

PARKVIEW ELECTRONICS TRUST, LLC  vs.  CONSERVATION COMMISSION OF
                         WINCHESTER.


No. 13-P-276.

Middlesex.      November 6, 2014. - January 12, 2016.

Present:  Trainor, Agnes, & Maldonado, JJ.


Municipal Corporations, Conservation commission, By-laws and
     ordinances.  Wetlands Protection Act.  Department of
     Environmental Protection.  Jurisdiction, Administrative
     matter.  Zoning, By-law, Wetlands.


     Civil action commenced in the Superior Court Department on
June 25, 2004.

     The case was heard by Mitchell H. Kaplan, J., on motions
for judgment on the pleadings.


     Jill Brenner Meixel (Vincent J. Pisegna with her) for the
plaintiff.
     Wade M. Welch (Melissa C. Donohoe with him) for the
defendant.


     AGNES, J.  The Wetlands Protection Act, G. L. c. 131, § 40

(act), sets forth "minimum wetlands protection standards, and

local communities are free to impose more stringent

requirements."  Oyster Creek Preservation, Inc. v. Conservation

Commn. of Harwich, 449 Mass. 859, 866 (2007).  As we noted in

Fafard v. Conservation Commn. of Reading, 41 Mass. App. Ct. 565,

568 (1996), it is not uncommon for a town, under its local by-

law, to establish wetland protection standards that are more

demanding than those under State law.  In such a case, when a

local commission concludes that a project meets the requirements

of State law, but does not satisfy the requirements of municipal

law, it "introduces no legal dissonance and violates no

principle of State preemption."  Ibid.  In Healer v. Department

of Envtl. Protection, 73 Mass. App. Ct. 714, 718 (2009), we

explained the requirements that must be met by a local

conservation commission that decides to act independent of State

law by exercising jurisdiction over wetlands exclusively on the

basis of a more stringent local by-law.[1]

---

[1]  "A local authority exercises permissible autonomous decision-making authority only when its decision is based exclusively on the specific terms of its by-law which are more stringent than the act.  The more stringent provisions of a local by-law provide an independent basis for an autonomous local decision.  The denial of a permit, or the requirement of additional conditions, may be based on the independent basis of the more stringent provisions of the local by-law.  The simple fact, however, that a local by-law provides a more rigorous regulatory scheme does not preempt a redetermination of the local authority's decision by the [Department of Environmental Protection] except to the extent that the local decision was based exclusively on those provisions of its by-law that are more stringent and, therefore, independent of the act.  Notwithstanding this fact, the DEP otherwise maintains the right to redetermine the local decision's application of provisions of the act."

In the present case, the by-law of the town of Winchester (local by-law) has a more expansive standard for "land subject to flooding" than does the act.[2] Nevertheless, the plaintiff, Parkview Electronics Trust, LLC (Parkview), contends that an order of resource area delineation (ORAD) issued by the conservation commission of Winchester (commission) is invalid under Healer because it was not based "exclusively" on the more stringent provisions of local law.[3] In effect, Parkview

_____

Healer, 73 Mass. App. Ct. at 718-719 (footnote and citation omitted).

[2] The local by-law provides in part that "[e]xcept as permitted by the commission or as provided in this by-law no person shall remove, fill, dredge, alter, or build upon or within one hundred (100) feet of any freshwater wetland, wet meadow, bog, or swamp; within one hundred (100) feet of any bank; upon or within one hundred (100) feet of any lake, river, pond, stream; upon any land under said waters; upon any land subject to flooding or inundation by groundwater or surface water; or within the foregoing areas in such a way as to detract from visual access to the Aberjona River, Horn Pond Brook, Winter Pond, Wedge Pond, Judkins Pond, Mill Pond, Smith Pond or Mystic Lake."  Local by-law c. 13, § 3.  The local by-law also defines "flooding" as "a temporary inundation of water or a rise in the surface of a body of water, such that it covers land not usually under water."  Local by-law c. 13, § 2.14.

Under the act, on the other hand, "[t]he boundary of Bordering Land Subject to Flooding [BLSF] is the estimated maximum lateral extent of flood water which will theoretically result from the statistical 100-year frequency storm," as determined by the Federal Emergency Management Agency.  310 Code Mass. Regs. § 10.57(2)(a)(3) (1997).

[3] An ORAD refers to an order issued by a local conservation commission that confirms or modifies an applicant's identification and delineation of bordering vegetated wetland

maintains that <u>Healer</u> requires a local commission to choose between reliance on State law or local law. For the reasons that follow, we reject this reading of <u>Healer</u> and affirm the judgment.

The essential facts are not in dispute. Parkview owns an industrial park (property) located in Winchester, consisting of seven buildings in which many businesses are located. The property has often been subject to flooding given its proximity to the Aberjona River. In 1996 and 1998, the Aberjona River overflowed its banks and flooded the property. In 1999, to protect the property, Parkview raised the driveway on the property (also referred to as berm) from 25.5 feet above sea level to 28.1 feet above sea level. The driveway acts as a berm to prevent future flood water from flowing onto the property.

In 2004, the property's abutter filed a request for an abbreviated notice of resource area delineation (ANRAD) with the commission, claiming that the berm had the effect of diverting water onto his property. On May 14, 2004, the commission, in response, issued the ORAD that is the subject of this appeal.[4] The ORAD states on the top of the form: "Order of Resource Area

and other resource areas subject to the act. See 310 Code Mass. Regs. § 10.05(6) (1997).

[4] In the ORAD, the commission determined that the boundaries described in the ANRAD request "are accurately drawn for the following resource area(s): . . . Bordering Land Subject to Flooding."

Delineation Massachusetts Wetlands Protection Act M.G.L. c. 131, § 40." After this language, the form states: "And Winchester Wetlands Bylaw."

Parkview commenced an action in the nature of certiorari against the commission on June 25, 2004, seeking to annul the ORAD issued on May 14, 2004. See G. L. c. 249, § 4. The commission issued additional orders on May 14 and May 22, 2006. Parkview filed an amended complaint seeking to annul all three orders. The parties filed cross motions for judgment on the pleadings. Following a hearing, a judge of the Superior Court granted the commission's motion and denied Parkview's motion, in effect ruling that the commission properly exercised jurisdiction over the property on the basis of the local by-law. Judgment entered accordingly.

Meanwhile, on May 27, 2004, Parkview filed an appeal from the ORAD with the Department of Environmental Protection (DEP), requesting a superseding order of resource area delineation (SORAD). Parkview asserted that the commission's decision to assert jurisdiction was in error. On April 30, 2010, the DEP issued a SORAD, and wrote a letter to Parkview, with a copy to the commission, stating that in 1999, the driveway was not within the 100-year flood plain shown on the Federal Emergency Management Agency's (FEMA) flood insurance rate map and, therefore, not within the jurisdiction of the act. The letter

also stated "that it is MassDEP's responsibility to address only those interests identified in the Wetlands Protection Act, M.G.L. Chapter 131, Section 40."

Discussion. Parkview maintains that the ORAD issued by the commission is not based exclusively on the local by-law and, thus, under Healer, was preempted by the SORAD issued by the DEP. We disagree. The regulatory authority of a local conservation commission stems from State law and, when there is a local by-law, as is the case here, local law as well. Insofar as the commission relied on the act in asserting jurisdiction, Healer, 73 Mass. App. Ct. at 717-718, makes clear that its decision is subject to being superseded by that of the DEP. See Garrity v. Conservation Commn. of Hingham, 462 Mass. 779, 783 (2012) (if local commission fails to act on application filed under G. L. c. 131, § 40, in timely manner, applicant or any interested party may request from DEP superseding order of conditions); Lippman v. Conservation Commn. of Hopkinton, 80 Mass. App. Ct. 1, 4 (2011) (any late-issued decision by local commission, even if based on more stringent local by-law, is without effect). However, when a local commission acts in a timely manner and, in addition to reliance on State law,[5] also

_____

[5] When an application is made to a local conservation commission under G. L. c. 131, § 40, the commission is charged with determining the applicability of the act. It may then, as

relies independently on a local by-law, as in this case, its decision interpreting and applying the local by-law is not subject to DEP review. See Hobbs Brook Farm Property Co. Ltd. Partnership v. Conservation Commn. of Lincoln, 65 Mass. App. Ct. 142, 149 (2005).

In this case, the commission initially asserted jurisdiction on the basis of both State and local law. The DEP subsequently found that the property in question was not subject to the commission's jurisdiction under the act. Even though the commission's assertion of jurisdiction under the act was in error and was superseded by the DEP's decision, the local by-law remains as an alternative basis for the commission's jurisdiction. We are satisfied that the more stringent definition of "land subject to flooding" contained in the local by-law, which is specifically referred to in the commission's ORAD, was an alternative basis for the commission's decision.[6]

---

in this case, determine whether it has jurisdiction on the basis of a more stringent local by-law.

[6] As the commission points out in its brief, a written memorandum by commission member Louise Ahearn dated January 21, 2004, was read and incorporated into the commission's minutes at their April 26, 2004, meeting, during which they voted "three to two that in 1999 the prime area was a" BLSF and "the area where the berm was built was land subject to flooding under the Winchester Wetlands ByLaws." The Ahearn memo states: "Even if the area of the berm is determined not to have been BLSF under state regulations, it may have been land subject to flooding under the Winchester wetlands by-law. Flooding is defined in [c. 13, § 2.14, of] the by-law as a 'temporary inundation of

Parkview's principal argument is based on the following sentences in Healer (see note 1, supra): "A local authority exercises permissible autonomous decision-making authority only when its decision is based exclusively on the specific terms of its by-law which are more stringent than the act. . . . The simple fact, however, that a local by-law provides a more rigorous regulatory scheme does not preempt a redetermination of the local authority's decision by the DEP except to the extent that the local decision was based exclusively on those provisions of its by-law that are more stringent and, therefore, independent of the act." Healer, 73 Mass. App. Ct. at 718-719 (footnote omitted). These sentences simply mean that in order for a local commission to ensure that its decision is not subject to DEP review, the commission must base its decision exclusively on local law. Insofar as a commission's decision is based on local law and State law, DEP has jurisdiction to review it and supersede that portion of the commission's decision that is based on State law. For this reason, local commissions purporting to act under both State law and independently under

---

water or a rise in the surface of a body of water, such that it covers land not usually under water'. . . . Evidence has been provided that land west of the Cross St bridge was flooded in the 1996 and 1998 floods. Therefore, in my opinion, in 1999 before the berm was constructed, that area was land subject to flooding under the town's wetlands by-law."

local law should make it clear in their written decisions and orders that there is a dual basis for their determinations.[7]

Parkview also claims that the definition of "land subject to flooding" in the local by-law is so vague as to violate the due process clauses of the United States Constitution and the Massachusetts Declaration of Rights. Section 2.14 of c. 13 of the local by-law (§ 2.14) defines "flooding" as "a temporary inundation of water or a rise in the surface of a body of water, such that it covers land not usually under water." See note 2, supra. Section 3 of c. 13 of the local by-law provides that the commission has jurisdiction over "any land subject to flooding or inundation by groundwater or surface water."

It is settled that "vagueness challenges to statutes not threatening First Amendment [to the United States Constitution] interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis." Love v.

---

[7] If we were to adopt Parkview's argument in this case, we would effectively expand the DEP's reviewing authority at the expense of a local commission's authority to act independently under a local by-law, in contravention of the principle that "[t]he Act 'establishes minimum Statewide standards leaving local communities free to adopt more stringent controls.'" Healer, 73 Mass. App. Ct. at 717, quoting from Golden v. Selectmen of Falmouth, 358 Mass. 519, 526 (1970). See Lovequist v. Conservation Commn. of Dennis, 379 Mass. 7, 14 (1979) ("We find unconvincing the plaintiffs' assertion that, because G. L. c. 131, § 40, does not give any express or implied powers to a municipality to adopt wetlands by-laws outside of a zoning framework, general by-laws concerning wetlands protection contravene the wetlands statute").

Butler, 952 F.2d 10, 13 (1st Cir. 1991), quoting from Maynard v.
Cartwright, 486 U.S. 356, 361 (1988).  See Commonwealth v.
Jasmin, 396 Mass. 653, 655 (1986); Fogelman v. Chatham, 15 Mass.
App. Ct. 585, 589 (1983) ("A law is not unconstitutionally vague
because it presents some questions as to its application in
particular circumstances.  Courts and administrative boards draw
lines and resolve ambiguities every day").

Parkview argues that the definition of "flooding" is so
general and broad that it gives the commission jurisdiction over
"every puddle in every driveway and backyard in Winchester."
However, there is no basis for the claim that Parkview was left
to guess as to the applicability of the local by-law to its
construction of a berm to hold back floodwater.  In a letter to
the commission dated April 5, 2011, Parkview's attorney noted
that there are seven businesses employing several hundred
persons located in the property.  The letter goes on to report
that "[t]he parties' properties are close to a portion of the
Aberjona River that has been prone to severe flooding since the
1990s.  The Aberjona flooded in 1996 and 1998.  As a result of
these floods, Parkview suffered in excess of $400,000 in damages
and Parkview's tenants suffered millions of dollars in damages."
As in Doherty v. Planning Bd. of Scituate, 467 Mass. 560, 572
(2014), we conclude that when § 2.14 is considered in light of
the general purpose of the local by-law as set forth in § 1 of

c. 13,[8] and the public policy concerns giving rise to it, it is not impermissibly vague.

Judgment affirmed.

---

[8] Section 1 of c. 13 of the local by-law provides that "[t]he purpose of this by-law is to protect the wetlands, related water resources, and adjoining land areas in the town by prior review and control of activities deemed to have an adverse effect upon wetlands values, including, but not limited to the following: . . . flood control."