NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1182

PIERRE COLL

vs.

CONSERVATION COMMISSION OF PLYMPTON & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The Plympton Conservation Commission (commission) denied the application of Pierre Coll (applicant) for an order of conditions allowing him to build a single-family home on his property containing wetlands, and the applicant filed a complaint seeking judicial review of that denial.  The applicant appeals from a judgment of the Superior Court affirming the commission's decision.  Concluding that the commission's decision that the applicant failed to demonstrate by clear and convincing evidence that the proposed project would provide a public benefit and have no significant adverse effect on

_____

[1] Richard Burnet, Amy Cronin, Linda Leddy, Michael Matern, and the town of Plympton.  The individuals were members of the Plympton Conservation Commission at the relevant time.

wetlands values was supported by substantial evidence, we affirm.

1. Standard of review. "In an action in the nature of certiorari challenging a wetlands permit decision made by a conservation commission pursuant to a local by-law, our review is limited at most to whether the commission's decision is supported by substantial evidence in the administrative record, whether the commission's action was arbitrary and capricious, and whether the commission committed an abuse of discretion or other error of law." Delapa v. Conservation Comm'n of Falmouth, 93 Mass. App. Ct. 729, 733-734 (2018). "Substantial evidence [is] such evidence as a reasonable mind might accept as adequate to support a conclusion." Cave Corp. v. Conservation Comm'n of Attleboro, 91 Mass. App. Ct. 767, 773 (2017), quoting Healer v. Department of Envtl. Protection, 75 Mass. App. Ct. 8, 13 (2009). "An agency's finding 'must be set aside if "the evidence points to no felt or appreciable probability of the conclusion or points to an overwhelming probability of the contrary."'" Rodgers v. Conservation Comm'n of Barnstable, 67 Mass. App. Ct. 200, 205 (2006), quoting New Boston Garden Corp. v. Assessors of Boston, 383 Mass. 456, 466 (1981).

Where, as here, the Superior Court judge decided the certiorari action on the pleadings, we review that decision de

2

novo.  See Boston Clear Water Co. v. Lynnfield, 100 Mass. App.
Ct. 657, 660 (2022).

2.  Propriety of commission review.  Where a local
conservation commission denies a wetlands permit based on the
requirements of G. L. c. 131, § 40, the applicant "may ask the
[Department of Environmental Protection (DEP)] to issue its own
order, which will 'supersede the prior order of the conservation
commission.'"  Boston v. Conservation Comm'n of Quincy, 490
Mass. 342, 345 (2022), quoting G. L. c. 131, § 40, nineteenth
par.  Where, however, a local conservation commission "rests its
determination on provisions of a local bylaw that are more
protective than" State law, "a superseding order of conditions
issued by the DEP cannot preempt the conservation commission's
bylaw-based determination."  Oyster Creek Preservation, Inc. v.
Conservation Comm'n of Harwich, 449 Mass. 859, 865 (2007).

The requirements of the town of Plympton (town) wetlands
bylaws and regulations are considerably more stringent than the
State requirements.[2]  Unlike the State law, the town bylaws and
regulations generally prohibit work within fifty feet of
vegetated wetland.  Town of Plympton Bylaws (Bylaws) § 290-2(A),
(D); Town of Plympton Wetlands Bylaw Regulations (Regulations)

---

[2] The applicant makes no argument that the regulations
exceed the proper scope of the broad authority imparted to the
commission to issue regulations under the town bylaws.  See Town
of Plympton Bylaws, §§ 290-6(G), 290-7.

§ 16(C), § 19(C)(1). Contrast 310 Code Mass. Regs. § 10.55 (2014). State law permits destroying or impairing vegetated wetlands up to five thousand square feet where they are replaced with equal and equivalent wetlands. 310 Code Mass. Regs. § 10.55(4)(b) (2014). The town regulations, by contrast, require "at least twice that of the altered Bylaw resource area and shall offer additional protection to the Bylaw wetlands values." Regulations § 21(D)(2). Accordingly, the town bylaws and regulations are more restrictive than State law. See Cave Corp., 91 Mass. App. Ct. at 771-772.

Of course, "[t]he simple fact . . . that a local by-law provides a more rigorous regulatory scheme does not preempt a redetermination of the local authority's decision by the DEP except to the extent that the local decision was based exclusively on those provisions of its by-law that are more stringent and, therefore, independent of the act." Healer v. Department of Envtl. Protection, 73 Mass. App. Ct. 714, 718-719 (2009). See also Parkview Elecs. Trust, LLC v. Conservation Comm'n of Winchester, 88 Mass. App. Ct. 833, 837 (2016) ("Insofar as a commission's decision is based on local law and State law, DEP has jurisdiction to review it and supersede that portion of the commission's decision that is based on State law"). Here, the commission specifically found that the project was in compliance with State law and "[a]pproved [it] under the

4

Massachusetts Wetlands Protection Act."  The commission, however, denied approval of the project because it found that the project violated several provisions of the town bylaws and regulations.

The commission explained in detail how the project failed to comply with town's more stringent requirements concerning the inner buffer zone.  The commission expressly applied Regulations §§ 16(C) and 19(C) and its general prohibition on alterations within the inner buffer zone.  This is not a case where "a town conservation commission simply refers to a by-law without providing any indication that it actually relied on it or how it did so."  Boston v. Conservation Comm'n of Quincy, 490 Mass. at 346, quoting Oyster Creek Preservation, Inc., 449 Mass. at 866 n.12.  Accordingly, the commission properly applied the town bylaws and regulations after concluding that the project complied with State law.

3.  Driveway.  The commission found numerous violations regarding the project's alterations in the inner and outer buffer zones.  To affirm the commission's denial of an order of conditions, however, we need address only the commission's findings regarding the driveway.  "We defer to the commission's reasonable construction of the by-law."  Nelson v. Conservation Comm'n of Wayland, 90 Mass. App. Ct. 133, 134 (2016).

5

Regarding the driveway, the project involves replacing up to 350 square feet of vegetated wetlands and requires tree clearing and driveway construction within the inner buffer zone. To obtain relief from the prohibition on work within the inner buffer zone, the applicant had, inter alia, the burden of showing "by clear and convincing evidence,[3] that: . . . (2) The proposed work, including necessary and required mitigation measures, and its natural and consequential cumulative effects, will have no significant adverse effects upon any of the Bylaw wetland values; and (3) That the project provides benefits in the public interest." Regulations § 21(B).[4]

The commission found that the applicant "failed to provide clear and convincing evidence that the initial construction of

---

[3] The applicant makes no argument that the "clear and convincing evidence" standard runs afoul of the principles stated in Conroy v. Conservation Comm'n of Lexington, 73 Mass. App. Ct. 552, 559 (2009). We note that, unlike in the Conroy case, the town bylaws specifically adopt the "clear and convincing" standard for "showing that the proposed work in the 'no touch zone' will not adversely affect the resource area." Bylaws § 290-2(D)(2).

[4] We recognize that the town bylaws separately allow the commission the discretion to waive any performance standard where "the Commission finds in writing after a public hearing that . . . the waiver is necessary to accommodate an overriding public interest or to avoid a decision that so restricts the use of the property as to constitute an unconstitutional taking without compensation." Bylaws § 290-6(F). These requirements have not yet been met, but nothing in our decision should be construed as suggesting the commission could not grant a waiver if it were established that the denial of a waiver would constitute a taking.

the driveway and the regular use will have no significant adverse effect on the vegetated wetland values." We start by observing that the applicant, who bore the burden of proof by clear and convincing evidence, put little effort into meeting this burden, relying solely on reports by Grady Consulting, which submitted the notice of intent on behalf of the applicant. Grady Consulting opined that "[t]he improvement of the accessway with gravel creates more stability," that "[t]he inclusion of a 12[-inch] pvc pipe under the improved accessway will allow for unobstructed flow of water," and that "[t]he proposed work to install a culvert and improve the path with a stable gravel surface is a significant improvement to continuing to use the dirt path as is." The Grady Consulting report concluded that the project "will have no significa[nt] adverse effects upon any of the Bylaw wetland values."

ADL Consulting submitted a report, repeatedly updated, that disagreed with many of Grady Consulting's opinions and conclusions. In its final form, ADL Consulting's report stated that no documentation had been provided to support the engineer's contention that a box culvert would not be preferable. ADL Consulting concluded that the project "is not in compliance of the local wetland regulations," that "[t]here appears to be reasonable alternative to the size and siting of the building foundation," and that "[w]ater off the driveway,

7

building roof and the size of the lawn area could impact groundwater quality and reduce the natural water absorption needed for drinking water."[5]

The applicant provided no expert testimony or other evidence to support the credibility of Grady Consulting's opinions over ADL Consulting's opinions.  Logic does not require (or, for that matter, exclude) the conclusion that a gravel road with a culvert leading to a single-family house is as good for the wetlands as the existing dirt road to an unimproved lot.  In short, nothing in the administrative record required the commission to credit Grady Consulting's opinion over ADL Consulting's opinion, much less find that the applicant had proved the absence of significant adverse effects by clear and convincing evidence.  As "a reviewing court may not displace an agency's deliberative choice between two fairly conflicting views of the record evidence," McGovern v. State Ethics Comm'n, 96 Mass. App. Ct. 221, 231 (2019), we have no cause to disturb the commission's denial.

4.  Public interest.  As stated, the landowner also had the burden to prove, by clear and convincing evidence, "[t]hat the project provides benefits in the public interest."  Regulations § 21(B)(3).  "Public interest" is defined in the regulations as

---

[5] Apparently, the town is reliant on private wells for residential drinking water.

8

"[s]omething of benefit to the health, welfare, or safety to the Plympton community at large as opposed to one individual, special interest group, organization, or other entity." Regulations § 4(B). The applicant's "Public Interest Statement" proposed that the public benefits would be "an increase in tax revenue," an increase in "[p]roperty values of surrounding houses," the improvement to the driveway, and the "proposed wetland replication area." The commission determined that the landowner had not met his burden of showing a public interest.

Again, the applicant failed to provide any significant evidence to support these contentions. Nothing in the administrative record establishes that the project would increase the property values of the surrounding houses or that the increased tax revenue from the project would exceed the increased costs of providing municipal services to the residents of the new single-family home. As explained supra, the commission could reasonably conclude that the new gravel driveway was not an improvement over the old dirt road. Although the applicant provided a comprehensive description of the wetland replication area, the applicant provided no evidence that it would be preferable to the existing state of affairs.

The applicant also urges on appeal that an offer of a conservation restriction constitutes a public benefit. Although this did not appear in the applicant's "Public Interest

9

Statement," the commission noted that "the Applicant mentioned the possibility of giving the Town a Conservation Restriction on a majority of the wetlands acreage."  Again, no details of this potential conservation restriction appear in the administrative record, and the applicant makes no attempt, even on appeal, to explain how this potential conservation restriction would protect anything that is not already protected by the town's wetlands regulations.  In light of the absence of proof in the administrative record of any of these proposed public benefits, the commission was justified in finding that the applicant failed to meet his burden of showing such public benefits by clear and convincing evidence.  See Narducci v. Contributory Retirement Appeal Bd., 68 Mass. App. Ct. 127, 136-137 (2007).

Judgment affirmed.

By the Court (Blake, C.J., Ditkoff & D'Angelo, JJ.[6]),

Clerk

Entered:  December 5, 2024.

---

[6] The panelists are listed in order of seniority.