## FIELDSTONE MEADOWS DEVELOPMENT CORP. *vs.* CONSERVATION COMMISSION OF ANDOVER.

No. 03-P-517.

Essex. April 7, 2004. - October 14, 2004.

Present: BECK, DUFFLY, & MILLS, JJ.

*Zoning,* Wetlands, By-law. *Municipal Corporations,* Conservation commission, Regulations. *Administrative Law,* Regulations.

A town's conservation commission improperly based its denial of the plaintiff developer's application to work within one hundred feet of a protected resource area on a policy that the commission had not lawfully adopted as a regulation and that contained no requirement of uniform application [267-269]; moreover, despite the commission's invocation of provisions of the town's wetlands protection by-law as the ostensible basis for its decision, the record demonstrated no consideration of the particularities of the proposed detention basin or of the evidence as to the actual or potential effect of the proposed work on the adjacent wetlands, and made clear that the only basis for the denial was the commission's legally insufficient assumption that only a twenty-five foot "no-build" zone would ensure that the proposed work would have no impact on the wetlands [269-270].

CIVIL ACTION commenced in the Superior Court Department on June 18, 2002.

The case was heard by *Barbara J. Rouse,* J., on motions for judgment on the pleadings.

*Howard P. Speicher* (*Ann Marie Sobolewski* with him) for the plaintiff.

*Thomas J. Urbelis* for the defendant.

DUFFLY, J. Acting under the Andover wetlands protection by-law (town by-law), the town of Andover's conservation commission (commission) denied the application of Fieldstone Meadows Development Corp. (Fieldstone) to perform work

within 100 feet of a protected resource area.[1] Fieldstone sought Superior Court review in the nature of certiorari. G. L. c. 249, § 4. The parties filed cross motions for judgment on the pleadings. A Superior Court judge allowed the commission's motion, and a judgment entered affirming the decision of the commission. Fieldstone appeals.

We conclude that the commission impermissibly based its denial of Fieldstone's application upon a policy imposing a "no-build" zone not otherwise found in the town by-law or any regulations promulgated thereunder.

1. *Background.* Fieldstone seeks to develop a five lot residential subdivision located off Porter Road in Andover, and filed a notice of intent (hereafter, application) with the commission seeking authorization to perform work on the land within 100 feet of a protected resource area. At issue is Fieldstone's proposed construction and installation of a detention basin within twenty-five feet of the bordering vegetated wetlands.[2] The basis for the commission's denial of Fieldstone's application is a policy providing for a twenty-five foot no-build zone that was not adopted as a regulation.[3] The genesis of the policy is not apparent from the record, but it is described by the commission in its decision denying the application, as follows: "Effective January 1, 1999, the Conservation Commission will

---

[1]Statewide wetland protection standards under G. L. c. 131, § 40, the Wetlands Protection Act, are not relevant to our determination in this case, which concerns, solely, the commission's action under the town by-law and a purported local "policy."

[2]Although the notice of intent details several aspects of the proposed project that required the commission's attention, in denying Fieldstone's application the commission focused only on the fact that the proposed detention basin would be located within twenty-five feet of the bordering vegetated wetlands. We confine our review to the reasons given by the commission for the denial of the application. Cf. *Canter* v. *Planning Bd. of Westborough*, 4 Mass. App. Ct. 306, 307 (1976) ("The Superior Court's review, and ours, must be confined to the reasons for disapproval of the subdivision plan stated by the planning board").

[3]Section 11 of the town by-law provides that the commission shall promulgate regulations, after due notice and public hearing, "requiring the maintenance of an undisturbed vegetated buffer of not more than 25 feet from the edge" of any areas protected by the town by-law. Although the commission drafted such regulations, it is not suggested that such a regulation was adopted and in effect at the time the commission acted on Fieldstone's application.

expect proposals to locate no alteration or disturbance of land closer than 25 feet to a wetland boundary. Special justification will be required for any proposal that seeks a lesser distance. Applicants for less distances will be required to show in detail that no damage occurs to the adjacent wetland." The commission in essence decided that, because Fieldstone's proposed work was within the no-build zone envisioned by the policy, Fieldstone was required, but failed, to meet the burden imposed by the policy that there would be "no damage" to the protected area. The commission's implicit assumption that any alteration occurring within the twenty-five foot area would have an adverse impact on the wetlands was at the root of its determination that the application also could be denied under various sections of the town by-law.

2. *Standard of review.* The standard of review under G. L. c. 249, § 4, varies according to the nature of the action for which review is sought. *Black Rose, Inc.* v. *Boston*, 433 Mass. 501, 503-504 (2001). *T.D.J. Dev. Corp.* v. *Conservation Commn. of N. Andover*, 36 Mass. App. Ct. 124, 128 (1994). We review the commission's denial to determine whether it was arbitrary and capricious in that it acted for reasons "extraneous to the prescriptions of the regulatory scheme, but are related, rather, to an ad hoc agenda." *Fafard* v. *Conservation Commn. of Reading*, 41 Mass. App. Ct. 565, 568 (1996). Compare *Lovequist* v. *Conservation Commn. of Dennis*, 379 Mass. 7, 18 (1979). Our review gives no special weight to the view of the Superior Court judge. *Doe* v. *Superintendent of Schs. of Stoughton*, 437 Mass. 1, 5 (2002).

3. *Discussion.* a. *The no-build policy.* We agree with Fieldstone that the commission's denial of Fieldstone's application was improperly based on a policy existing outside of the regulatory framework. "In the administration of controls limiting the use of land — as with any exercise of the police power — uniformity of standards and enforcement are of the essence. If the laws are not applied equally they do not protect equally." *Fafard* v. *Conservation Commn. of Reading*, 41 Mass. App. Ct. at 569, citing *SCIT, Inc.* v. *Planning Bd. of Braintree*, 19 Mass. App. Ct. 101, 106-111 (1984), and *National Amusements, Inc.* v.

*Boston*, 29 Mass. App. Ct. 305, 312 (1990).[4] Cf. *Newton* v. *Belger*, 143 Mass. 598, 599 (1887) (city ordinance exceeded scope of fire prevention statute, where it gave board of aldermen "the power, by refusing a permit, to prevent the erection of any building . . . for any reason which may be satisfactory to them").

Relying on these principles, we conclude that a no-build zone "policy" not lawfully adopted as a regulation, and containing no requirement of uniform application, cannot form the basis of the commission's denial in this case.[5] The decision to deny the permit on the basis of such a policy was therefore arbitrary. See *Fafard* v. *Conservation Commn. of Reading, supra* at 572 ("The criteria [the conservation commission] applied were devised for the occasion, rather than of uniform applicability. Thus flawed, the commission's decision was arbitrary"). Cf. *Beale* v. *Planning Bd. of Rockland*, 423 Mass. 690, 696 (1996) ("A planning board exceeds its authority if requirements are imposed beyond those established by the rules and regulations"). Compare *Lakeside Builders, Inc.* v. *Planning Bd. of Franklin*, 56 Mass. App. Ct. 842, 846-848 & n.6 (2002) (planning board denied waiver

---

[4]The conservation commission in the *Fafard* case had promulgated a regulation requiring a twenty-five foot "natural vegetation buffer strip" adjacent to the wetland and refused to issue an order of conditions because of its opinion that the proposed work outside of the twenty-five foot buffer strip would have secondary or potential impact upon the buffer area. *Fafard* v. *Conservation Commn. of Reading*, 41 Mass. App. Ct. at 567. The court concluded there that the conservation commission had no authority to require a buffer zone wider than the twenty-five feet established by regulation and that the conservation commission thus had acted arbitrarily in denying a permit on that basis. *Id.* at 570.

[5]That the policy did not require uniform application, and was subject to arbitrary invocation, is evidenced by the language of the policy itself, which provides that "special justification" could be advanced for proposals for building within the twenty-five foot zone. As one of the commission members stated at a hearing, "the 25 feet concern was not one of slavish compliance."

Notwithstanding our recognition that the policy may not have been applied to all applicants, if applied in accordance with its terms as it was to Fieldstone's application, the policy operates as an absolute bar to construction within twenty-five feet of the wetlands. It is no defense to a challenge to enforcement of the policy that the commission chose not to apply it uniformly, particularly when the commission articulates no principled basis on which to apply or waive the policy in a particular case.

of regulation in part due to change in policy that previously had encouraged dead-end streets; not arbitrary to enforce regulation).

b. *The town by-law.* The commission argues that, even if the denial was not properly based on its twenty-five foot no-build policy, its action may still be upheld because the commission, in its decision, also invoked §§ 2, 7, and 8 of the town by-law as alternative bases for the denial.

These provisions extend to the commission the general authority to regulate activities within the 100-foot buffer zone, and set out the criteria upon which it may deny an application or approve it with conditions. There is, however, nothing in these provisions or any other provision of the town by-law creating an absolute bar to activity within the 100-foot buffer zone. Under § 2 of the town by-law, specified work in the protected area is prohibited "[e]xcept as permitted by the Conservation Commission." Under § 8 of the town by-law, the commission may deny, or approve subject to conditions, an application for activities that "are likely to have a significant or cumulative effect upon the values protected" under the town by-law.[6] The commission may, pursuant to § 8, require an applicant to maintain an "undisturbed vegetative cover" if within a prescribed distance from protected resources, "unless the applicant demonstrates that the area or part of it may be disturbed without harm to the values protected by this by-law."

The commission's findings demonstrate no consideration of the particularities of the proposed detention basin or of the evidence as to the actual or potential effect of the proposed work on the adjacent wetlands. It is apparent, despite invocation of the town by-law as the ostensible basis for its decision, that the denial was in fact based entirely on the commission's assumption that only a twenty-five foot no-build zone will ensure that the proposed work will have no impact on the wetlands.[7] Compare *T.D.J. Dev. Corp.* v. *Conservation Commn. of N.*

---

[6]Section 1 of the town by-law provides that such values include the protection of "the wetlands, related water resources and adjoining land areas in the Town of Andover."

[7]The commission found that a twenty-five foot no-build zone would afford greater protection to the resource area, and noted that this finding was based on information obtained by certain unidentified commission members at a seminar they attended, sponsored by the Massachusetts Association of

*Andover*, 36 Mass. App. Ct. at 129 (where commission found that proposed work would impact adjacent wetlands, imposition of twenty-five foot no-cut and fifty foot no-construction condition on project was within "reasonable range of the commission's authority to regulate activity in the [100-foot] buffer zone"). Here, the commission's reliance on such an assumption was legally insufficient to support the denial.

4. *Conclusion.* Based on the foregoing, we vacate the judgment of the Superior Court. A new judgment is to enter annulling the commission's denial of the requested order and remanding the matter to the commission for further proceedings consistent with this opinion. See *McDonald's Corp.* v. *Selectmen of Randolph*, 9 Mass. App. Ct. 830, 832 (1980).

*So ordered.*

Conservation Commissions, entitled "Use of Vegetated Buffers as Water Quality Technique." We recognize that in a specific instance the commission could well find that a proposed activity should be precluded because it does not, for example, "avoid or prevent unacceptable significant or cumulative effects upon the values protected by [the] by-law [or that] no conditions are adequate to protect those values," as required by § 8 of the town by-law. Such a finding must, however, be supported by substantial evidence. *Lovequist* v. *Conservation Commn. of Dennis*, 379 Mass. at 17-18. The commission's reliance on anonymous sources alone (the scientific basis of which was not identified) would not be sufficient to constitute that substantial evidence.