NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-612

THOMAS J. HUTTON & another[1]

vs.

BOARD OF HEALTH OF NANTUCKET.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs, through a trust, own a 16,000 square foot parcel, including a three-bedroom seasonal dwelling, on Smith Point, located at the southwest tip of Nantucket.  After being notified that their conventional septic system had failed and needed to be replaced, the plaintiffs applied to the Nantucket board of health (board) for approval of an innovative/alternative (I/A) system that, they asserted, satisfied the Department of Environmental Protection's (DEP) Title 5 regulations, 310 Code Mass. Regs. §§ 15.000, as well as the board's regulations.  The board denied the application and required the plaintiffs to install a more burdensome and

_____

[1] Susan Hutton.

expensive "tight tank" system.[2]  The plaintiffs filed an action for certiorari review in the Superior Court, arguing that the board's denial of their application was arbitrary and capricious and seeking declaratory relief.  A Superior Court judge affirmed the board's decision.  We reverse the Superior Court judgment, vacate the board's decision, and remand for further proceedings.

Background.  Smith Point's sole connection with the rest of the island of Nantucket is a small wooden span known as Millie's Bridge, which carries Ames Avenue over a portion of Hither Creek.  The Madaket area of Nantucket in which Smith Point is located lacks a connection to the town's water and sewer services and instead relies on individual wastewater disposal systems and public or private wells.  Nitrogen runoff from conventional on-site septic tanks has degraded the water quality in the Madaket Harbor area.  To protect this environmentally fragile region, the board established the Madaket Harbor Watershed Protection District (watershed district).  Zones A and B of the watershed district include virtually all of Madaket; Smith Point is located within Zone A.  Board Regulation 51 states that any property owner in Zone A or B whose conventional septic system requires repairs or upgrades must replace it with

_____

[2] A tight tank is a "water tight vessel having an inlet to receive raw sewage but no outlet and which is designed and used to collect and store sewage until it is removed for disposal." 310 Code Mass. Regs. § 15.002 (2014).

either a tight tank or a DEP-approved nitrogen-reducing wastewater disposal system.

In addition, in local Regulation 49 the board designated the Smith Point area over Millie's Bridge, where the plaintiffs' property is located, as the "Madaket Tight Tank District" (tight tank district).  The board found that the tight tank district's coastal ecosystem is even more sensitive to nitrogen runoff than the rest of the watershed district and is prone to severe erosion and high velocity flooding.  Regulation 49 was prepared and submitted to the DEP in 2015 as an addendum to Nantucket's comprehensive wastewater management plan (CWMP) and was subsequently adopted following notice and comment.

In November 2020, the town health department informed the plaintiffs that their septic system was in "technical failure" and that Regulation 51 required them to install a DEP-approved I/A septic system "with nitrogen reduction of at least 19 mg/l" within twelve months.  The plaintiffs hired an engineer to prepare an application for the board's approval of an I/A system that, the plaintiffs contended, would reduce nitrogen effluent flows to acceptable levels.  Early in the application process, however, a health department official informed the engineer by email that the board intended for all properties across Millie's Bridge to install tight tanks under Regulation 49.  In October 2021, the board held a public hearing on the plaintiffs'

3

application.  The plaintiffs urged the board to approve their proposed I/A system because it satisfied DEP's requirements, was "largely compliant" with Regulations 49 and 51 and was similar to I/A systems installed on the other side of the bridge, also affecting the watershed district.  Considering the plaintiffs' application as a request for a variance from Regulation 49's tight tank requirement, the board voted to deny it because the proposed I/A system would cause more nitrogen runoff than a tight tank, which would produce none.

The plaintiffs filed a complaint in the Superior Court for certiorari review of the board's decision and for declarations that the board's interpretation and application of Regulation 49 was unlawful, invalid, and violated their due process and equal protection rights.  Acting on cross motions for judgment on the pleadings, the judge affirmed the board's decision.  This appeal followed.

Discussion.  The plaintiffs assert several interrelated reasons why the board's denial of their application was arbitrary and capricious.  They argue that decision violated their due process rights because the regulation under which the board acted was void for vagueness; that by interpreting the regulation to require tight tanks in all instances, the board impermissibly amended the regulation without following the procedures required under G. L. c. 111, § 31; and that decision

4

was arbitrary and capricious because the board did not consider the merits of their application.[3]

Certiorari review under G. L. c. 249, § 4, "is limited to correcting substantial errors of law that affect material rights and are apparent on the record" (quotation and citation omitted).  Gloucester v. Civil Serv. Comm'n, 408 Mass. 292, 297 (1990).  "Certiorari review is calibrated to the nature of the action for which review is sought, and thus may involve either the substantial evidence standard or the arbitrary and capricious standard" (quotation and citation omitted).  Perisho v. Board of Health of Stow, 103 Mass. App. Ct. 593, 597 (2023). We review the board's decision de novo.  See Fieldstone Meadows Dev. Corp. v. Conservation Comm'n of Andover, 62 Mass. App. Ct. 265, 267 (2004) ("Our review gives no special weight to the view of the Superior Court judge").

---

[3] The plaintiffs also argue that Regulation 49 is invalid because the board failed to file a copy with DEP as required by G. L. c. 111, § 31.  Even if the board neglected to file an attested copy of the regulation after it was adopted, this failure does not invalidate the regulation.  General Laws c. 111, § 31, has no language, such as appears in G. L. c. 30, § 37, and G. L. c. 30A, § 5, that specifically makes filing a condition precedent for a regulation to become effective thereunder.  It does not impose a time limit for filing an attested copy.  And the purpose of filing with the department -- after the fact, for maintenance in a central registry for convenience of the public -- is divorced from any substantive review or approval process.  Moreover, the plaintiffs had actual notice of the regulation, and its absence from the central registry caused them no harm.

The plaintiffs contend that Regulation 49 is unconstitutionally vague because it failed to inform them of what they must do to obtain approval for a septic system and provided the board with unlimited discretion to arbitrarily deny all applications for I/A systems in the tight tank district.[4]  "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required."  Federal Communications Comm'n v. Fox Tel. Stations, Inc., 567 U.S. 239, 253 (2012).  A statute or regulation is void for vagueness when people "of common intelligence must necessarily guess at its meaning and differ as to its application, thereby allowing untrammeled [administrative] discretion . . . and arbitrary and capricious decisions" (quotations and citation omitted).  Daddario v. Cape Cod Comm'n, 56 Mass. App. Ct. 764, 770 (2002), cert. denied, 540 U.S. 1005 (2003).  See Caswell v. Licensing Comm'n for Brockton, 387 Mass. 864, 873 (1983) ("Vague laws violate due process because individuals do not receive fair notice of the conduct proscribed by a statute . . . and because vague laws that do not limit the exercise of discretion by officials engender the

_____

[4] The plaintiffs raised this claim in opposition to the board's cross motion for judgment on the pleadings, which is not the equivalent of raising it for the first time in a reply memorandum or brief.  The claim was adequately raised in the Superior Court and preserved for appellate review.

6

possibility of arbitrary and discriminatory enforcement").  As this case does not implicate free speech concerns or criminal conduct, we consider only whether Regulation 49 "is unconstitutionally vague as applied in this case."  Id.

Regulation 49 is not unconstitutionally vague.  We read the regulation against the backdrop of DEP's Title 5 regulations, which strongly disfavor tight tanks.  Putting aside an exception not here applicable,[5] tight tanks are prohibited except where needed "to eliminate a failed on-site system when no other feasible alternative to upgrade the system in accordance with [DEP regulations] exists."  310 Code Mass. Regs. § 15.260(1) (2014).  When the board submitted Regulation 49 for review in connection with the town's CWMP, DEP commented that the regulation allowed for "a limited number of tight tanks" in the "small tightly defined area" of the tight tank district.

Acknowledging that tight tanks are disfavored, Regulation 49 states repeatedly that tight tanks may be required in lieu of conventional or I/A systems only as a "last resort."  For example, the regulation states that tight tanks will not be permitted "for new construction or increases in design flow, but rather only as a last resort."  If the board determines that a septic system "requires an upgrade" under Title 5, it "may"

_____

    [5] That exception applies to existing seasonal-use residences.  See 310 Code Mass. Regs. § 15.260(8) (2014).

7

require the property owner to install a tight tank as "a last resort alternative."  In the case of a "failed" septic system, the board may require it to be replaced with a tight tank.  The regulation also limits the circumstances under which the board may exercise its discretion to require a tight tank:  when "no other feasible available alternative for wastewater disposal as determined by the [b]oard" exists.[6]  The use of the words "require" and "requirements" in the regulation -- which are consistently prefaced with permissive language -- do not establish an across-the-board tight tank mandate, as the board contends.

Accordingly, the regulation provides sufficient standards to guide the board's discretion to determine when a tight tank might be required.  The use of the vagueness doctrine to invalidate land use decisions is reserved for "truly horrendous situations" (citation omitted).  Daddario, 56 Mass. App. Ct. at 771.  This is not one of them.

---

[6] In the minutes of the public hearing on the adoption of Regulation 49, a staff member stated that it "is a set regulation dependent upon the size of the property and bedroom count.  90% of the properties north of Millie's Bridge are extremely small and would automatically require tight tank installation."  The plaintiffs claim that their property is within the ten percent of larger properties not subject to the automatic requirement.  However, the terms of the regulation do not include any distinctions based on property size.

8

Having set forth standards in Regulation 49 to guide its discretion, however, the board was obliged to apply those standards fairly and consistently in its decision-making. It was not free to act "for reasons that are extraneous to the prescriptions of the regulatory scheme." Fafard v. Conservation Comm'n of Reading, 41 Mass. App. Ct. 565, 568 (1996). The plaintiffs assert that the board instead based its decision on "an unannounced, de facto amendment." We agree.

The plaintiffs attempted to comply with the board's regulations by proposing a "feasible" I/A system, given the size of their property, that would sufficiently reduce nitrogen levels such that a tight tank was not necessary as a "last resort." As the minutes of the hearing made clear, however, the board did not consider the merits of the plaintiffs' proposal. Rather, the board had adopted an internal interpretation of Regulation 49 that required all properties in the tight tank district to upgrade or replace their septic systems with tight tanks, without exception. The board did not treat the tight tank requirement as a last resort, and it made no determination whether an I/A system might be feasible for the plaintiffs' property. Accordingly, the board's "denial of [the plaintiffs'] application was improperly based on a policy existing outside of the regulatory framework." Fieldstone Meadows Dev. Corp., 62 Mass. App. Ct. at 267. "The decision to deny the permit on the

9

basis of such a policy was therefore arbitrary."  Id. at 268.
See also Hercules Chem. Co. v. Department of Envtl. Protection,
76 Mass. App. Ct. 639, 643 (2010), quoting Long v. Commissioner
of Pub. Safety, 26 Mass. App. Ct. 61, 65 (1988) ("Arbitrary and
capricious action is that which is taken 'without consideration
and in disregard of facts and circumstances'").[7]

Conclusion.  The judgment of the Superior Court is
reversed.  An order shall enter vacating the board's denial of
the plaintiffs' application and remanding the plaintiffs'
application to the board for further consideration consistent
with this decision.

So ordered.

By the Court (Milkey,
  Massing & Neyman, JJ.[8]),

Assistant Clerk

Entered:  April 16, 2024.

---

[7] To the extent the board intended to implement an across-the-board tight tank policy, it could do so only through the regulatory process set forth in G. L. c. 111, § 31.  Cf. Carey v. Commissioner of Correction, 479 Mass. 367, 371-372 (2018), quoting G. L. c. 30A, § 1 (5) (under State Administrative Procedure Act, rules of "general application and future effect" must be promulgated as regulations); Water Dep't of Fairhaven v. Department of Envtl. Protection, 455 Mass. 740, 749 (2010) ("If the department wishes to require registrants to take specified conservation measures, it must do so by regulation").

[8] The panelists are listed in order of seniority.

10