NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-675

STEPHEN M. McPARLAND, trustee,[1] & another[2]

vs.

CONSERVATION COMMISSION OF BARNSTABLE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs, Stephen M. McParland and Beth F. McParland, as trustees for the McParland Family 2014 Revocable Trust (McParlands), brought an action in the nature of certiorari under G. L. c. 249, § 4, challenging the denial by the conservation commission of Barnstable (commission) of their application to construct a permanent pier on their waterfront property in Osterville (property).  On the parties' cross motions for judgment on the pleadings, a Superior Court judge entered judgment affirming the decision of the commission.  The

_____

    [1] Of the McParland Family 2014 Revocable Trust.

    [2] Beth F. McParland, as trustee of the McParland Family 2014 Revocable Trust.

McParlands appeal, claiming principally that the commission's decision was arbitrary and capricious and based on findings unsupported by substantial evidence. We vacate the Superior Court judgment and remand for entry of a new judgment that annuls the decision of the commission and remands the matter to the commission for further consideration.

Background. The McParlands own property at 150 Carriage Road in Osterville. On December 16, 2022, the McParlands applied for a permit to build a pier for nonmotorized watercraft in a high-value shellfish area (project). On January 3, 2023, and February 14, 2023, the commission held public hearings on the project. On February 28, 2023, the commission voted to approve the project under the Wetlands Protection Act, G. L. c. 131, § 40 (act), but to deny the project under the town's wetland protection regulations. On March 2, 2023, the commission issued an order of conditions and, in support of its decision, found that the McParland project would (1) reduce water access for shellfish harvesting; (2) have a significant impact on shellfish habitat due to space occupied by pilings; (3) scour shellfish habitat; and (4) contribute to the potential for exotic species proliferation.

Discussion. We review de novo a judge's order allowing a motion for judgment on the pleadings. See UBS Fin. Servs., Inc. v. Aliberti, 483 Mass. 396, 405 (2019). "[O]ur review is

2

limited at most to whether the commission's decision is supported by substantial evidence in the administrative record, whether the commission's action was arbitrary and capricious, and whether the commission committed an abuse of discretion or other error of law."  Delapa v. Conservation Comm'n of Falmouth, 93 Mass. App. Ct. 729, 733-734 (2018).  Under the act, municipalities are empowered to issue regulations and "may enact more stringent requirements than those provided in the act."  See Hobbs Brook Farm Prop. Co. v. Conservation Comm'n of Lincoln, 65 Mass. App. Ct. 142, 149 (2005).  "Unless an agency's interpretation of its own regulation is arbitrary, unreasonable, or inconsistent with the plain terms of the rule, such interpretation is entitled to deference" (quotation and citation omitted).  Carey v. Commissioner of Correction, 479 Mass. 367, 369-370 (2018).

Section 703-3(A) of the local regulations requires an applicant, in relevant part, to file a notice of intent before constructing "any new pier or dock, whether fixed or floating, permanent or seasonal."  Under local regulation § 237-6(B), the commission is authorized to deny a permit where the application (1) fails "to meet the design specifications, performance standards, policy guidelines or other requirements in [the regulations]"; (2) fails "to avoid or prevent unacceptable significant or cumulative effects upon the wetlands values

3

protected by [the regulations]"; or (3) where denial is "deemed

. . . necessary to preserve the environmental quality of

resource areas." According to local regulation § 703-1(K),

piers conforming to local regulations "can be presumed to

minimize . . . possible negative [wetland] impacts."

Here, the commission denied the McParlands a permit based

on findings that the project "will cause negative impacts on

[wetland] values" and "result in negative effects" on shellfish

habitats and fishing access.[3] Ultimately, the commission found

that the McParlands failed to prove, by a preponderance of the

evidence, that "a permanent pile pier would, in fact, lessen the

environmental impact" compared to a seasonal pier.[4] However, the

proper question under the local regulations was whether the

McParlands proved that the project would not have "unacceptable

---

[3] The commission also argues in its brief that the project did not comply with the performance standard limiting the length of the pier to one hundred feet from mean low water to the end of the pier. However, the McParlands' proposed pier was eighty-one feet from mean low water to the end of the pier, and thus complied with the regulation.

[4] We note that in a May 9, 2023, order of conditions approving an unrelated permit application to convert a nearby seasonal pier to a permanent pier, the commission made no mention of a requirement that the applicant prove the permanent pier's lesser environmental impact compared to the seasonal pier.

4

significant or cumulative effects" on the wetland resource values.[5]

Because the commission did not apply the correct standard, the commission's "denial of [the McParlands'] application was improperly based on a policy existing outside of the regulatory framework." Fieldstone Meadows Dev. Corp. v. Conservation Comm'n of Andover, 62 Mass. App. Ct. 265, 267 (2004). Where the project complied but the commission failed to apply the standard of review articulated by the local regulations, we conclude that the commission's decision to deny the McParlands' application was arbitrary and capricious and based on an error of law.[6] See

---

[5] To the extent that the commission based the permit denial on "environmental quality" concerns due to potential for proliferation of invasive species on permanent piers, we note that the commission's May 9, 2023, permit application approval for the nearby site did not mention the potential for the proliferation of invasive species. The appeals in that unrelated case and this case were paired for oral argument; at oral argument, the commission offered no justification for why the potential for invasive species proliferation was central to the negative determination on the McParland pier application, but not relevant to the approval of the other permit application.

[6] We decline to address the McParlands' general contention that the commission's decision was a product of its "ad hoc agenda against permanent docks and piers." The McParlands also argue that the commission's determinations that the project would reduce access for shellfish harvesting and that "ice eaters" used to prevent pilings on permanent piers from freezing would scour shellfish habitats were not supported by substantial evidence. Based on our conclusion that the commission's decision was arbitrary and capricious, we need not reach those issues either, except to note that shellfish could be raked

id. at 268.  Thus, we vacate the Superior Court judgment and remand for entry of a new judgment that annuls the decision of the commission and remands the matter to the commission for further factual findings and application of the proper standard under the local regulations; that is, whether the project would have "unacceptable significant or cumulative effects" on the wetland resource values.[7]

        The judgment is vacated, and the case is remanded to the Superior Court for further proceedings consistent with this memorandum and order.

        By the Court (Henry, Shin & Brennan, JJ.[8]),

        Clerk

Entered:  July 14, 2025.

---

under and all the way around the project's pier, which would be five feet above the water and only four feet wide. Additionally, the project did not propose to use ice eaters. Instead, the project would have used polyvinyl chloride (PVC) collars around the pier's piles to prevent displacement of the pier during the winter.  In concluding that the project necessitated the use of ice eaters, the commission made no finding regarding the effectiveness of PVC collars.

[7] The decision whether to hold additional hearings is within the commission's discretion.  See Box Pond Ass'n v. Energy Facilities Siting Bd., 435 Mass. 408, 420 (2001).

[8] The panelists are listed in order of seniority.

6