NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-674

SHAWN D. MARTIN, trustee,[1]

vs.

CONSERVATION COMMISSION OF BARNSTABLE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Shawn D. Martin, as trustee for the 310 North Bay Road Realty Trust (Martin), brought an action in the nature of certiorari under G. L. c. 249, § 4, challenging the denial by the conservation commission of Barnstable (commission) of his application to construct a permanent pier in place of an existing seasonal pier on his waterfront property in Osterville (property).  On the parties' cross motions for judgment on the pleadings, a Superior Court judge entered judgment affirming the decision of the commission.  Martin appeals, claiming principally that the commission's decision was arbitrary and capricious and based on findings unsupported by substantial

_____

[1] Of the 310 North Bay Road Realty Trust.

evidence.  We vacate the Superior Court judgment and remand for entry of a new judgment that annuls the decision of the commission and remands the matter to the commission for further consideration.

Background.  In 2002, the commission approved an application to construct a pier, a ramp, and a float at 310 North Bay Road in Osterville.  The commission issued the permit pursuant to the Wetlands Protection Act, G. L. c. 131, § 40 (act), and the town's wetlands protection regulations (local regulations).  That pier, ramp, and float currently exist at the property.

In 2004, the commission promulgated new local regulations regarding private docks and piers that impose additional requirements for projects in "high-value shellfish" areas. Nevertheless, the pier continued to exist in the same footprint with full use as authorized by the 2002 order of conditions. The pier is located within a high-value shellfish area.

On December 27, 2022, Martin applied for a permit to convert the pier's support structure from temporary posts to permanent piles (project).  The converted pier would have the same footprint and be in the same location as the existing pier. The size of the posts for the existing seasonal pier was four inches, while the size of the project's proposed piles was twelve inches.  The number of posts and piles was the same.

2

On January 10, 2023, after a public hearing, the commission voted to approve the project under the act, but to deny it under the local regulations. On January 26, 2023, the commission issued an order of conditions, which included findings that the project would (1) cause a permanent loss of shellfish habitat by increasing the surface sediment area occupied by pilings; (2) have a cumulative effect on the overall water sheet; (3) increase the likelihood of the growth of invasive species on the pier; and (4) reduce water access for fin fishing and boat-based shellfish harvesting year-round, rather than seasonally.

Discussion. We review de novo a judge's order allowing a motion for judgment on the pleadings. See UBS Fin. Servs., Inc. v. Aliberti, 483 Mass. 396, 405 (2019). "[O]ur review is limited at most to whether the commission's decision is supported by substantial evidence in the administrative record, whether the commission's action was arbitrary and capricious, and whether the commission committed an abuse of discretion or other error of law." Delapa v. Conservation Comm'n of Falmouth, 93 Mass. App. Ct. 729, 733-734 (2018). Under the act, municipalities are empowered to issue regulations and may enact more stringent requirements than those provided in the act. See Hobbs Brook Farm Prop. Co. v. Conservation Comm'n of Lincoln, 65 Mass. App. Ct. 142, 149 (2005). "Unless an agency's interpretation of its own regulation is arbitrary, unreasonable,

3

or inconsistent with the plain terms of the rule, such interpretation is entitled to deference" (quotation and citation omitted). Carey v. Commissioner of Correction, 479 Mass. 367, 369-370 (2018).

Section 703-3(A) of the local regulations requires an applicant to file a notice of intent before constructing "any new pier or dock, whether fixed or floating, permanent or seasonal," and "for any substantial alteration or extension of an existing pier or dock." Under local regulation § 237-6(B), the commission is authorized to deny an application that (1) fails "to meet the design specifications, performance standards, policy guidelines or other requirements in [the regulations]"; (2) fails "to avoid or prevent unacceptable significant or cumulative effects upon the wetlands values protected by [the regulations]"; or (3) where denial is "deemed . . . necessary to preserve the environmental quality of resource areas." According to local regulation § 703-1(K), piers conforming to local regulations "can be presumed to minimize . . . possible negative [wetland] impacts."

Here, the commission denied Martin's permit based on findings that the project "will have a cumulative effect on the overall water sheet," "may have an adverse effect on resource areas and the use of these areas," and "is likely to result in negative effects on shellfish." Ultimately, the commission

4

found that Martin failed to prove, by a preponderance of the evidence, that "a permanent pile pier would, in fact, lessen the environmental impacts" compared to a seasonal pier.[2]  However, the proper question under the local regulations was whether Martin proved that the project would not have "unacceptable significant or cumulative effects" on the wetland resource values.[3]  The commission's findings are premised on its assessment of the relative merits of seasonal piers versus permanent piers; the regulations do not prohibit permanent piers, however, and the commission did not identify with particularity any unacceptable significant and cumulative effect of the project.  Although the commission stated that the change from a seasonal pier to a permanent pier would have a "cumulative effect on the overall water sheet," there was no

---

[2] We note that in a May 9, 2023, order of conditions approving an unrelated permit application to convert a nearby seasonal pier to a permanent pier, the commission made no mention of a requirement that the applicant prove the permanent pier's lesser environmental impact compared to the seasonal pier.

[3] To the extent that the commission based the permit denial on "environmental quality" concerns due to potential for proliferation of invasive species on permanent piers, we note that the commission's May 9, 2023, permit application approval for the nearby site did not mention the potential for the proliferation of invasive species.  The appeals in that unrelated case and this case were paired for oral argument; at oral argument, the commission offered no justification for why the potential for invasive species proliferation was central to the negative determination on the Martin pier application, but not relevant to the approval of the other permit application.

evidence of the cumulative impact of the project, nor of the effects of existing docks and future docks with pending applications as required under § 703-5(A) of the regulations. Instead, the commission simply expressed concern that the project would "set a precedent for all existing seasonal piers" in Barnstable.

Because the commission did not apply the correct standard, the commission's "denial of [Martin's] application was improperly based on a policy existing outside of the regulatory framework." Fieldstone Meadows Dev. Corp. v. Conservation Comm'n of Andover, 62 Mass. App. Ct. 265, 267 (2004). Where the commission failed to apply the standard of review articulated by the local regulations, we conclude that the commission's decision to deny Martin's application was arbitrary and capricious and based on an error of law.[4] See id. at 268. Thus, we vacate the Superior Court judgment and remand the case for entry of a new judgment, annulling the commission's decision and

_____

[4] Martin also argues that the commission's determination that the project would reduce water access for fin fishing and boat-based shellfish harvesting was not supported by substantial evidence. Based on our conclusion that the commission's decision was arbitrary and capricious, we need not reach that issue. However, we note that because the project's pier would be six and one-half feet above the bottom and only four feet wide, shellfish could be raked all the way around a permanent pier. We decline to address Martin's general contention that the commission's decision was a product of its "ad hoc agenda against permanent docks."

6

remanding the matter to the commission for further factual findings and application of the proper standard under the local regulations; that is, whether the project would have "unacceptable significant or cumulative effects" on the wetland resource values.[5]  See id. at 269-270 (remanding matter to local conservation commission where denial of application was based on legally incorrect assumption and "commission's findings demonstrate[d] no consideration of the particularities of the proposed detention basin or of the evidence as to the actual or potential effect of the proposed work on the adjacent wetlands").

<u>The judgment is vacated, and the case is remanded to the Superior Court for further proceedings consistent with this memorandum and order</u>.

By the Court (Henry, Shin & Brennan, JJ.[6]),

Clerk

Entered:  July 14, 2025.

---

[5] The decision whether to hold additional hearings is within the commission's discretion.  See Box Pond Ass'n v. Energy Facilities Siting Bd., 435 Mass. 408, 420 (2001).

[6] The panelists are listed in order of seniority.

7